260 So.2d 727 (1972)
Nathalie BOND, Individually and as Natural Tutrix of the Minor, Nathaniel Bond Vallee
v.
Ciro TORIELLO.
No. 4847.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1972.
Rehearing Denied May 2, 1972.
Writ Refused June 15, 1972.
*728 Kierr, Gainsburgh & Benjamin, George S. Meyer, New Orleans, for plaintiffs-appellees.
Leonard A. Calcagno, New Orleans, for defendant-appellant.
Before REGAN, REDMANN and BOUTALL, JJ.
BOUTALL, Judge.
Nathalie Bond, individually and as natural tutrix of her minor son, sued Ciro Toriello for personal injuries to her son and resulting damages occasioned when defendant shot her son at about 3:00 o'clock on the morning of January 28, 1967. Suit was brought for $100,000.00 damages to Mrs. Bond and $650,000.00 damages to her son. The trial court, without written reasons, rendered judgment as prayed. Defendant has taken a devolutive appeal.
The uncontested facts are as follows.
Ciro Toriello, age 37, was the owner of a pizza parlor or restaurant located at 7918 Maple Street, New Orleans. The restaurant hours are from 5:00 p. m. to 1:00 or 1:30 a. m. He and his wife, Ina, age 46, live above the restaurant on the second floor. Both were immigrants to this country and were naturalized in 1964.
On January 27, 1967, plaintiff's son, Nathaniel Bond Vallee (born February 10, 1949) met two other boys of similar age and the three visited several bars and lounges drinking beer. During the course of the night at around midnight (the estimates of time vary), these three boys, together with others, visited Toriello's pizza parlor but purchased nothing. Allegedly they came there to visit with Chris Schramel, a young employee. They were requested to leave by Toriello and did so with no trouble.
Vallee and his two companions visited several other places to drink beer and around 3:00 a. m. returned to the vicinity of Toriello's place, long after it was closed and the Toriellos had gone to bed upstairs. The facts now become contradictory, but the admitted reason for this visit was to steal beer from the alleyway and rear yard of Toriello's premises. During the attempted commission of this crime, Vallee was shot by Toriello from his bedroom window and was paralyzed from the waist down. For this the present damages are sought.
At this point, it may be well to set the scene. Along the right side (as one faces it) of Toriello's restaurant, is an alleyway about 5 feet wide. Alongside the front of the building is an archway and iron gate barring entrance to the alley. A wooden fence, 7 feet high, separates the alley from the neighboring yard. In the rear yard of Toriello's property, this fence reduces in height to 4 or 5 feet. Within this alley Toriello keeps his soft drinks, cleaning equipment, trash cans and other miscellaneous items. In this area, some 47 feet from the front of the building there is a side door entering the restaurant and immediately inside a stairway going up to the living quarters. Just to the rear of this door, Toriello's bedroom projects out from the second floor overlooking the alley, the projection having windows front and rear.
Adjoining Toriello's property towards Short Street is the premises 7922-24 Maple Street. The house is located on the far right of the property (facing it) so as to form a side yard between it and Toriello's fence about 25 feet wide, widening in the rear. This yard is divided in two by a 4 foot wire fence perpendicular from Toriello's fence, at a point about even with the front of the bedroom overhang. There are several trees and considerable shrubbery in this yard, although at the time (January) most contained no leaves. Between this side yard and the house a side walk runs from front to rear providing access to the premises.
*729 At approximately 3:00 a. m., Vallee and his two companions, Louis Desobry and Stuart Lanoux drove to the vicinity and parked their automobile on Short Street, around the corner from Maple. Their stated purpose was to steal some beer from Toriello's alley (supposedly kept under the bedroom overhang). Lanoux remained in the car (whether because he refused to go or because he was to drive the get-away car is not clear), and Vallee and Desobry walked over to the premises adjoining Toriello's and entered the side yard. Desobry scaled the high wooden fence into Toriello's alley. It is disputed whether Vallee also entered the alley or stayed along the outside of the fence. Both boys say Vallee stayed outside the fence, but the Toriellos say they saw more than one figure inside.
In any event, some noise was made by the boys, awakening Mrs. Toriello. To her it sounded as if someone was trying to break in the side door. She awakened her husband and began yelling excitedly. He went to the back window and began shouting "Who's out there? What are you doing? Get out of here!", and similar phrases. He saw someone run into the back yard (Desobry) and at this time his wife, who was at the window facing front over the door, continued to yell hysterically. He got his pistol, ran to the other window, and hearing more noise below (he said, like wood noises) he shot his pistol through the window screen, allegedly down into the alley, fearful that others were present, and hoping to frighten them away. This shot struck Vallee and paralyzed him from the waist down. There were no lights on in the alley at this time and the whole area was so dark he could only see with difficulty.
It is plaintiff's contention that Vallee was in the adjoining yard and started to run away when he heard Toriello shout and that he was shot when he was on the sidewalk 18 feet away. Because of the effect the shot had, that is, the bullet having entered the body in an upward direction and paralyzing Vallee from the waist down, it is not possible for it to have been aimed straight down into the alley, from the bedroom window above, but it is possible to have been directed near or at the top of the fence. In the excitement of the moment, it is hardly likely that anyone would be able to tell precisely what happened.
The main basis of plaintiff's suit is that Vallee was running away at the time he was shot and that excessive force was used in preventing him from so doing; that there was no genuine or imminent threat to Toriello's safety to justify the use of the pistol. To this defendant answers that Vallee was engaged in the commission of a crime on defendant's premises at 3:00 a. m. and that there was a real threat to the safety of defendant and his wife and they truly believed this to be so; alternatively that Vallee assumed the risk of injury by his action, and his actions constitute contributory negligence. Since the trial judge assigned no written reasons for his judgment, we undertake to analyze the facts as they appear in the record and to then apply the relevant law, mindful that we cannot reverse his decision unless there is manifest error.
First we note that there is no question but that Vallee and his companions were engaged in the commission of a crime. They say they only intended to steal some beer. The Toriellos say that there was an attempt to break in the premises. We do not believe the theft of beer was the purpose intended.
Primarily we so conclude because the undisputed testimony of Toriello is that he had no beer in his place, sold no beer and had no license to sell beer. These boys had been in his place earlier that night and although drinking beer before and after, purchased nothing in Toriello's place. They say only that they were told by Schramel (who did not testify) that Toriello kept beer in the alley. Additionally, when Desobry was being questioned as to why he spent so much time in the alley *730 after discovering there was no beer there he testified that:
"I wasn't really searching for beer, I was just sort ofwhat we were really doing was fooling around."
Admittedly it is difficult to assign any clear meaning to such a statement except that it does negate a quest for beer. Additional support of this is given by the evident preparations made in planning the crime. The boys waited until after the place was closed and things were quiet. They parked the get-away car on Short Street with Lanoux (who actually drove Desobry away) staying in it. This was a strategic location and well chosen. Desofry's escape route lay through Toriello's back yard, across a low fence there, through the adjoining side yard and across a low fence there into a driveway leading directly to Short Street and the escape vehicle. The testimony of Vallee shows that he intended to escape, not out the front gate he entered, but down the walk alongside 7922-24 Maple leading to a gate in that same back fence and driveway.
However, the important thing to be considered is that these two boys deliberately went upon defendants' property in a dark and relatively inaccessible area near the side door for the purpose of committing a crime, easily conceived to be a burglary of the premises, in the early morning hour of 3:00 o'clock. Under these circumstances they certainly assume the risk of being shot, either accidentally or purposely, and such actions constitute contributory negligence, if negligence be found upon the householder.
But it is the position of plaintiff that the effects of the commission of the crime ceased, and that the participants were fleeing when Vallee was shot, and that use of such excessive and dangerous force was unjustified; relying on Young v. Broussard, 189 So. 477 (La.App. 1st Cir., 1939); Bethley v. Cochrane, 77 So.2d 228 (La.App.Orls.1955); Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456 (1932); Randall v. Ridgley, 185 So. 632 (La.App.Orls. 1939); Smith v. Foucha, 172 So.2d 318 (La.App. 4th Cir., 1965); Sauls v. Hutto, 304 F.Supp. 124 (USDC, E.D.La.1969).
An examination of the jurisprudence cited to us reveals that in each case there are material differences in the factual situation than appears in the present case. As we pointed out in McKellar v. Mason, 159 So.2d 700 (La.App. 4th Cir., 1964) (at 703):
"In determining what is reasonable conduct, there is no fixed rule. The special facts and environmental characteristics of each case must be considered and treated individually in conformity with the essential civilian judicial technique.
Judicially, we are tending more and more toward an appreciation of the truth that in the last analysis there are few absolute rules; there are principally standards and degrees of negligence for the reason that no judge is so gifted with foresight that he can anticipate every possible factual event and prescribe the proper rule for each."
In the case at bar not only do we have a householder who is awakened from bed at 3:00 a. m. by a hysterical wife who hears noises as if someone is breaking into their home, but who also realizes there are more than one intruder present. In the dark, he cannot perceive whether they are armed or unarmed, or what their intentions are. Add to this the facts that Mr. and Mrs. Toriello were the victims of an armed robbery, one night 15 months before; that they were the victims of a burglary of the restaurant while they were asleep 6 months before, and that they heard on the radio and discussed with customers the armed robbery and murder of a business man on Magazine Street, not very far from this area that very night. Certainly these facts justify firing a gun, either accidentally or purposely, at the intruder.
For cases with somewhat similar factual situations we refer to the Cases of McKellar *731 v. Mason, supra; Edwards v. Great American Insurance Company, 146 So.2d 260 (La.App. 2nd Cir., 1962); Patterson v. Kuntz, 28 So.2d 278 (La.App.Orls.1946). For comparison with a situation involving the shooting of an innocent victim, a newsboy, for which no recovery was allowed, see: Smith v. Delery, 98 So.2d 899 (La.App.Orls.1957).
For the reasons we conclude that the trial court committed manifest error in redering judgment for plaintiff. It is obvious that young Vallee suffered a grievous injury and will be permanently paralyzed from the waist down. However, we can find no legal liability of the defendant and we must reverse the judgment below.
Appellee to pay costs in both courts.
Reversed.