328 So.2d 367 (1976)
Ross CATES, Individually and as Natural Tutor of his Son, Larry G. Cates
v.
BEAUREGARD ELECTRIC COOPERATIVE, INC., et al.
No. 56949.
Supreme Court of Louisiana.
February 23, 1976.
Rehearing Denied March 26, 1976.
John J. Cummings, III, Gregory F. Gambel, New Orleans, for plaintiffs-applicants.
Carl H. Hanchey, Lake Charles, Lemuel E. Hawsey, III, Baton Rouge, for defendants-respondents.
DIXON, Justice.
Larry Cates, sixteen years and eight months old, suffered an electrocution accident on September 30, 1972 which left him seriously maimed. An action for damages was brought against Beauregard Electric Cooperative, Inc., owner of the utility pole on which the accident occurred, and Cecil Ribbeck, owner of the land where the pole *368 was located. Other defendants, originally named, have been dismissed and are not before us.
Motions for summary judgment were filed by the electric company and the landowner. At first the motions for summary judgment were denied, but, on application for rehearing, the district judge decided that there were no material issues of fact, and gave judgment for the defendants, rejecting the plaintiff's claim.
On appeal, the trial court was affirmed. Cates v. Beauregard Electric Cooperative, 316 So.2d 907 (La.App.1975). The majority opinion of the Court of Appeal found that the undisputed facts convicted young Cates of contributory negligence, preventing his recovery. The dissenter in the Court of Appeal, interpreting Odom v. Hooper, 273 So.2d 510 (1973), to hold that contributory negligence cannot be decided on a motion for summary judgment, was of the opinion that contributory negligence was an issue which should have been submitted to the jury.
The defendant electric cooperative attached to its motion for summary judgment the depositions of Larry Cates, his younger brother, Ronnie (nine at the time of the accident), and Kent Guy (sixteen at the time of the accident), who were the only persons present when Larry was injured. Also attached to the motions were evidence, testimony and drawings describing the physicial condition of the electrical apparatus. Defendant Ribbeck relied on other depositions to establish a history of the electrical wire on his property. Plaintiff, in answer to the motions for summary judgment, filed affidavits which tended to establish that, although the land was privately owned, it had acquired the status of a recreational area and was relatively open to public use for activities such as horseback riding, hunting, fishing, etc.
Ribbeck's land consisted of about seventy acres near Moss Bluff. Part of the land was fenced and part was unfenced. The land was bounded on two sides by roads. It contained an old farmhouse which had been abandoned for fifteen or twenty years, and was in a dilapidated condition.
Electrical service had been run to the farmhouse some time after 1948, and had been discontinued about 1957. The electrical wires entered the property about 800 feet from the location of the pole where the accident occurred. There was a tap at the main line pole at the intersection of North Perkins Ferry Road and Dunn's Ferry Road. The main line was charged with 7620 volts, single phase. The primary wire and the neutral wire left the main line and ran easterly across the road a little more than 70 feet to a pole with a crossarm, then continued on to Ribbeck's land for over 360 feet to a pole without a crossarm. At this point the primary conductor was at the top of the pole, and the aluminum ground (called the system ground) was attached to the pole 4 feet below the primary. Both wires then (originally) continued for over 430 feet to the pole where the accident happened.
At that point, the line ended. There was a transformer on the pole from which two insulated service wires had once furnished 110 or 120 volts of electricity for the household current at the farmhouse. These wires had been cut. On the day after the accident their ends were about 10 feet above ground level. On the day of the accident there is testimony that the ends of the wires hung from the pole to a point less than 6 feet from ground level.
The pole was 29 feet tall. The primary conductor was 28 feet 4 inches from the ground. Four feet below the primary was the attachment for the neutral wire. Only about 4 feet of the neutral wire remained on the pole. Below the neutral attachment was the transformer, necessary to reduce the current to the voltage required for the household service. The transformer was a little over a foot and a half tall.
*369 A ground wire also grounded the pole; stapled to the pole, it ran its full length to a rod embedded in the earth.
There was no connection between the primary conductor and the transformer. That is, the transformer was not energized. The only energized wire on the pole was the primary conductor, 28 feet 4 inches from the ground.
Larry Cates did not remember anything about the day on which the accident happened until after he fell to the ground from the top of the pole which he had climbed. Ronnie Cates' deposition disclosed that he and Larry went to Kent Guy's home about 4:00 o'clock in the afternoon, and all three rode their horses on to the Ribbeck place near the abandoned house. When they noticed the wire, Larry stood on his saddle and climbed up the pole to a point where his right foot was on the transformer hanger and his left foot was on the top of the transformer. Ronnie saw Larry reach for the pliers to cut the wire, slip, and grab the primary conductor at the top of the pole.
In his deposition, Kent Guy told of meeting Larry and Ronnie at about 3:30 in the afternoon, that he changed clothes and went horseback riding with the other two boys, and was with them until the accident happened at about 6:00 or 6:30. Kent told of riding with Larry about a month and a half earlier in the vicinity of the pole where the accident happened. Kent's horse had run into a wire that was only three or four feet above the ground, stretched from the pole where the accident happened back to the pole toward the highway. The wire broke when the horse ran into it. Kent said that he picked up one end of the wire and threw it into the bushes out of the way.
This episode was recited by Kent Guy to justify his opinion that there were no energized wires on the pole which he and Larry set out to climb; Kent apparently figured that the top wire in a primary distribution line ought to be the neutral wire.
Kent had with him a tool which he described first as wire cutters and then as "diagonal pliers." He said that he was working on a small tractor when the Cates boys invited him to go riding with them, and was using the pliers at that time. He also said, however, that, after he finished the work on the tractor, he went into the house and changed clothes before going riding.
Kent Guy said they tried to pull down the two dangling wires from the pole, but were unsuccessful. Kent then attempted to climb the pole, but could not. He then gave the pliers to Larry, who put them in the game pocket of a coat or jacket, and then proceeded to shinny up the pole. Kent said he asked Larry "if he was sure that all the wires up there were dead." Larry replied in the affirmative. (Larry was not unintelligent, and was not unaware of the dangers of electricity). Kent allowed his attention to wander when suddenly Ronnie screamed. Kent looked up and saw Larry hanging by his left hand from the primary conductor.
The employees of the electric cooperative in investigating the accident found the ends of the two insulated wires hanging from the pole to be more than 10 feet from the surface of the ground. They also found flash marks, indicating electrical burns, on the transformer hanger, on the pole ground and on the primary conductor. There was burned flesh on the primary conductor and on the pole ground wire.
When a summary judgment is sought it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." C.C.P. 966. Further, when a motion for summary judgment is made and supported, the adverse party cannot rest on allegations of his pleadings, but must set out, in evidence or depositions, "specific facts showing that there is a genuine issue for trial." C.C.P. 967.
*370 The question presented is an uncomplicated one under C.C. 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." For the purposes of the motion for summary judgment, the defendant electric cooperative admits negligence. Defendant Ribbeck makes no such admission. The position of both defendants is that, because of the acts of plaintiff himself, either intentional or negligent, there can be no recovery.
We agree with both courts below. Larry was injured in an accident caused by his own fault, not the fault of defendants. From the uncontroverted facts before us, we can reach no other conclusion under the present state of the law.
By either subjective or objective standard, Larry's fault is clear. A reasonable person should have known the risk involved in shinnying up a pole to cut an electric wire. Larry knew something about electricity. He was reminded of the danger by his companion as he climbed the pole, but apparently assumed that there were no live wires on the pole. He was not entitled to such an assumption. The fact that a horse had run into a sagging wire several weeks before without harm to horse or rider did not justify a belief that it was safe to climb a 30 foot pole to cut and remove wire.
Uninsulated electric wires carrying high voltage electricity are extremely dangerous. In some situations there might be recovery for injury in spite of fault on the part of the injured person, but not where, as here, one is hurt while in a place where he has no right to be, in an effort to accomplish no lawful purpose, while aware of the danger involved. See Bond v. Toriello, 260 So.2d 727 (La.App.1972), cert. den., 262 La. 189, 262 So.2d 788 (1972).
No logical comparison can be made between this case and cases like the "springgun" cases. Katko v. Briney, 183 N.W.2d 657 (Iowa 1971); Prosser, Law of Torts, 4th ed. § 21 (1971). There is no trap set. Electric wires on a pole are an announcement of danger to almost anyone smart enough and old enough to get himself in contact with a wire 28 feet above the ground. See Nessmith v. Central Louisiana Electric Co., 257 So.2d 744 (La.App.1972), cert. den., 261 La. 480, 259 So.2d 921 (1972).
Plaintiff relies strongly on Odom v. Hooper, supra, for his contention that contributory negligence cannot be decided on a motion for summary judgment. His reliance is misplaced; Odom v. Hooper should not be so interpreted. When the evidence submitted on the motion leaves no relevant, genuine issue of fact, and when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court, the motion for summary judgment should be granted (C.C.P. 966), even if the defense is contributory negligence.
Our conclusions are applicable to plaintiff's claims against Ribbeck, the landowner, as well as against the electric cooperative. We note, however, that the Court of Appeal resorted to a "status" analysis to determine the duty owed by the landowner, concluding that, since plaintiff was a "trespasser," at least when he began to climb the pole, the landowner owed him no duty except to refrain from "wanton or willful" conduct which might harm plaintiff.
We find the common law classifications of invitee-licensee-trespasser to be of little help in applying C.C. 2315. See, for example, criticism in 30 La.L.Rev. 217 (1969); 26 La.L.Rev. 520, 522 (1966); 23 La.L.Rev. 296 (1963).
California has a statute very similar to C.C. 2315. California Civil Code art. 1714 states:
"Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the *371 management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."
The California Supreme Court has recognized that this section of their Code embodies a civil law and not a common law principle. Fernandez v. Consolidated Fisheries, Inc., 98 Cal.App.2d 91, 219 P.2d 73 (1950). In the case of Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968), the California Supreme Court noted that the common law rules relating to the status of the entrant vis-a-vis the property owner are a deviation from the fundamental concept that a man is liable for injuries caused by his carelessness. Therefore, in Rowland v. Christian, supra, it abandoned the trespasser-licensee-invitee classifications in favor of a traditional negligence analysis.
We agree with the California court's approach as adopted in Rowland v. Christian, supra:
"It bears repetition that the basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property. The factors which may in particular cases warrant departure from this fundamental principle do not warrant the wholesale immunities resulting from the common law classifications, and we are satified that continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity and confusion. We decline to follow and perpetuate such rigid classifications. The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licence, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." Rowland v. Christian, 70 Cal.Rptr. 97, 104, 443 P.2d 561, 568.
The Court of Appeal reached the correct result. Cecil Ribbeck owed plaintiff the duty of ordinary care under the circumstances. We would not, however, find it necessary to resort to an invitee-licensee-trespasser analysis to find the duty owed. (Our conclusionthat plaintiff's injury was caused by his own voluntary exposure to the hazardous electric wiremakes it unnecessary to find the precise duty owed by Ribbeck to plaintiff).
Since we find there is no genuine issue as to material fact, and that plaintiff is barred from recovery as a matter of law, the judgment of the Court of Appeal is affirmed at the cost of plaintiff.
TATE, J., dissents and assigns reasons.
CALOGERO, J., dissents.
TATE, Justice (dissenting in part, concurring in part).
I concur insofar as the majority finds no issue of material fact with regard to the negligence of the defendant landowner. He was not responsible for the maintenance of the highly energized line on the poles on his land, nor did he have any knowledge that the apparently dead lines to the former farmhouse location were still energized.
I dissent, however, insofar as summary judgment is rendered in favor of the electric company, the negligence of which is unquestioned. The majority errs in finding that there is no issue of fact with regard to the contributory negligence of Larry Cates, the sixteen-year old minor for whose injuries recovery is sought.
The majority is in error in finding that, under the facts shown for the limited purpose *372 of summary judgment, the plaintiff's contributory negligence as a matter of law bars his recovery. For reasons to be stated later, it is inappropriate under the present showing to determine this issue of fact, under the controverted evidence whether the plaintiff boy's contributory negligence in fact bars his recovery.
First, however, it may be appropriate to consider the legal issue of the boy's contributory negligence presented by the pleadings, before we discuss whether there is a material issue of fact as to it.
In considering contributory negligence, we must first consider the shown negligence of the electric company. It is the light of the hazard created through its negligence that the reasonableness of the conduct of the boy must be measuredan issue of fact which cannot be determined on motion for summary judgment.
The electric company left energized a main line charged with current of 7620 volts. No useful purpose is shown for leaving energized with lethal voltage of this magnitude in a dead-end electrical line leading nowhere. Under such circumstances, the creation of a risk of harm of such magnitude, for no reason, constitutes gross negligence. Allien v. Louisiana Power & Light Co., 202 So.2d 704 (La.App.3d Cir. 1967), certiorari denied, 251 La. 392, 204 So.2d 574 (1967).
Similarly, the person subject to such an extraordinary risk may not be under a duty to anticipate it. See Allien. Contributory negligence is conduct which falls below the standard to which the plaintiff should conform for his own safety under the circumstances, Restatement of Torts 2d, Sections 463, 464 (1965), including an unintentional and unreasonable exposure of himself to danger created by the defendant of which the plaintiffs know or have reason to know. Restatement, Section 466(1). See Harper & James, The Law of Torts, Section 22.10 (1956); Prosser on Torts, Section 65 (4th ed. 1971). Further, where there is aggravated negligence by the defendant (as here), the contributory negligence of the plaintiff must be of a reckless character to defeat recovery. Prosser, Section 65 at p. 426.
Under these circumstances, a material issue of fact exists whether the conduct of the boy, under the circumstances, amounts to contributory negligence which will bar his recovery. For instance, a person touching an apparently unenergized line which might at the most have 110 volts, may not be unreasonable to expect slight if any injury by approaching or touching itas compared with the truly serious injuries that must result if he approaches or touches a line charged with extraordinarily dangerous voltage of 7260 volts.
As a result of his exposure to this extraordinarily dangerous hazard, this young boy lost his hands and feet, is a quadriplegic, and is totally paralyzed from the fifth vertebra down. He has suffered a complete loss of bodily function and will never walk again.
In a motion for summary judgment, the majority is in error in deciding this factual issue of contributory negligence. We ourselves have held that summary judgments must be denied, where there is a "genuine issue as to material fact", La.C.Civ.P. art. 966, even though we may have believed that the preponderance of the evidence might favor the defendant moving for summary judgment. Odom v. Hooper, 273 So.2d 510 (La.1973) (contributory negligence); Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963).
These decisions, and the host of intermediate decisions following them, are authority for the following principles for applying the summary judgment provisions, La.C. Civ.P. arts. 966-68:
The summary judgment remedy, which deprives a litigant of trial on the merits, is not a substitute for such trial. It may not be resorted to whenever there is a genuine issue of material fact which must be resolved. *373 In passing upon a motion for summary judgment, the function of the court is not to determine the merits of the issues raised, but it is rather only to determine whether or not there is a genuine issue of material fact. The burden to show there is not a material factual issue is upon the mover for summary judgment. All doubts must be resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts.
To grant a summary judgment in derogation of these principles, may deprive the opposing party of cross-examination of opposing witnesses and of the opportunity to have the trier of fact evaluate the demeanor testimony of witnesses rather than accept at face value affidavits and depositions prepared or taken in lawyers' offices rather than in open court.
We have, until now, thus adopted the view of those federal decisions which, in applying the federal summary judgment upon which our own is based, have held that a litigant has a right to trial on the merits where there is the slightest doubt as to the facts. 6 Moore's Federal Practice, Section 56.13(3) (1965); James, Civil Procedure 235-36 (1965).
As stated at 10 Wright & Miller, Federal Practice & Procedure 514-15 (1973): "Therefore, a party moving for summary judgment is not entitled to a judgment merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial. This is true, even though both parties move for summary judgment. Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper."
The showing here made indicates that the evidence as to contributory negligence is subject to conflicting interpretations. It is improper, on motion for summary judgment, to determine the issue of contributory negligence by our own factual decision of this factual issue. The motion for summary judgment should not be granted simply because we think the facts indicate one party or the other should have judgment on the merits, but only when the showing indicates there is "no genuine issue as to material fact." La.C.Civ.P. art. 966.
To decide an "issue" of material fact on motion for summary judgment is contrary to the code articles governing the remedy. It is also, contrary to the intent of the remedy, to deprive a litigant of his right of trial on the merits in open court, with cross-examination and demeanor evaluation and all the traditional aids to truth of our adversary system, and instead to permit disposition on affidavits and depositions read in judges' chambers.
I therefore respectfully dissent as to the grant of summary judgment in favor of the electric company.