DOMENGEAUX, Judge.
Emetilde Guillotte, a 78 year old widow, sues for personal injuries sustained when she tripped and fell over a string of Christmas lights used to decorate the Town Hall of Iowa, Louisiana.
The facts are not in dispute. The Iowa Town Hall is a relatively small, single story structure. The public had access to the building only through the front double doors, which could be reached by three concrete paths. Two of these ran in a north-south direction, a few feet from and parallel to the building’s facade. The third path ran in an east-west direction and led directly from the sidewalk in the front of the building to the main entrance.
On December 1, 1975, a clear day, the town’s maintenance crew was engaged in decorating the building for Christmas. As part of the decorations already put up, a string of Christmas lights were run along the two side pathways and along each side of the third main pathway. The string of lights were suspended on stakes stuck into the ground at a height of approximately 16 to 20 inches. As a result the string of Christmas lights ran across and obstructed the main path in the vicinity of its intersection with the sidewalk.
On the same day Mrs. Guillotte had received her pension check and, as was usually her custom, was walking around the town in order to pay various bills. Her last stop was the Iowa Town Hall in order to pay her water bill. She approached the Town Hall using the main sidewalk adjacent to the street. It was her intent to go up the main walkway leading to the building and to enter the main door. When she reached the walkway, she was surprised by *1190 the string of lights blocking her path. She momentarily hesitated, but then decided to step over it. In the process of stepping over, her foot caught in the string of lights, and she tripped and fell on the concrete pavement. She sustained a serious fracture of her right arm.
Suit was filed on July 2, 1976, against the town of Iowa and its general liability insurer, Houston General Insurance Company, alleging that the accident was caused by the negligence of the town of Iowa employees in placing a string of lights across the main path. After a trial by jury, judgment was rendered granting Mrs. Guillotte monetary damages. Defendants have perfected a suspensive appeal. We reverse.
The first issue raised by defendants on appeal involves the negligence of the town of Iowa and its employees in placing a string of lights across the main path leading to the building. Properly phrased in light of contemporary case law, the issue is whether the town of Iowa breached a duty owed to plaintiff which was designed to protect her from the injury she sustained. There is no issue concerning causation.
We feel that the town of Iowa was under a duty to manage its property reasonably in view of the probability of injury to others. Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976); Cates v. Beauregard Electric Coop., Inc., 328 So.2d 367 (La.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); Lecompte v. State, Dept. of Public Safety, 343 So.2d 449 (La.App. 3rd Cir. 1977). This duty was breached when the string of Christmas lights was placed across the main path. One of the reasons for this duty was to protect pedestrians from stumbling and injuring themselves. Thus the town of Iowa owed a duty to Mrs. Guillotte, the breach of which caused her injuries.
However, the question is academic in this case because of defendants’ second argument concerning contributory negligence or assumption of risk. Generally, one who voluntarily exposes himself to risks, with full knowledge and appreciation of the danger involved, cannot recover damages for injury which may occur. We find that Mrs. Guillotte assumed the risk when she discovered the obstacle but, nevertheless, decided to proceed across it.
Mrs. Guillotte’s testimony in this regard is important:
“Q. And what did you walk up town for?
A. To go pay my bill. It was my payday, so I went around and pay my bill. I went at Lynn. I went at Dugas Drug Store, I went at Reeds Drug Store, and paid my gas bill. After that I went at Western Auto and paid my telephone bill, and after that I went to the bank and paid by light bill, and I had just the water bill to pay. So I started going back home, walking on the sidewalk, and when I got in front of the City Hall there were some wires string across the walk, and it kind of surprised me, but I wanted to go pay my bill, and I went over it, and when I did, that’s when I fell, and broke my arm.”
And further:
“Q. Now after you finished paying your bills you were proceeding north on the sidewalk that is on the west side of Thompson Avenue?
A. That’s right; that’s right. And then when I went in front that’s when I found that cord, you know, and it surprised me, but anyway I wanted to go pay my bill, and so I went over, and when I did, well, that’s when it — I lost my balance and I fell on my arm.”
And finally, she testified:
“Q. When you came back and you got to the City Hall, and you turned and you saw this string of lights—
A. Yeah.
Q. —you realized what they were for?
A. Well, no, I didn’t realize what they were for. I just looked at it, and then I wanted to go pay my bill, and went over; that’s all.
*1191 Q. You stopped, you saw the cord, and it had light bulbs in it, and it was hanging above the sidewalk?
A. Yes, sort — sort of that; yes.
Q. Now I think you told us that you decided that you wanted to go on in, so you tried to step across the cord, is that correct?
A. Well, I have told you already how it all happened. When I got there, I just wanted to go pay, and I went over.
Q. Well, Mrs. Guillotte, what I’m trying to do, I am trying to like slow it down and take it one step at a time, if you remember. It is my understanding that when you got to the cord you stopped, but you decided that you wanted to go in and pay your bill. So what you did was pick up one foot and step over the cord, is that correct?
A. I did, yeah.
Q. And then you lost your balance—
A. Yes.
Q. —when you were on one foot, and you didn’t pick your back foot up enough and it hung in the cord, and you fell?
A. That’s right, I fell.
Q. That’s how the accident happened?
A. Yeah.”
We think that the evidence in this case is unquestionably clear. Mrs. Guillotte saw the string of Christmas lights, hesitated, and then decided to attempt to step over it. There were other means by which she could have gained access to the main entrance of the building. We feel that Mrs. Guillotte knew of the risk involved when she proceeded to continue up the main path after seeing the string of lights. See Rachal v. Brookshire Grocery Stores, Inc., 336 So.2d 1014 (La.App. 3rd Cir. 1976), writ denied, 339 So.2d 358 (La.1976). We therefore find that the jury was in error by not finding Mrs. Guillotte barred from recovery.
We are not unmindful of the well established rule of appellate factual review verbalized in Canter v. Koehring Company, 283 So.2d 716 (La.1973), by which a reviewing court must give great weight to factual conclusions drawn by the trier of fact. Where there is a conflict in testimony reasonable evaluations of credibility and reasonable inferences of fact drawn by a jury should not be disturbed upon review, even though the appellate court feels its inferences and evaluations are as reasonable. However, there is no conflict in the testimony in this case. Evaluations of credibility and reasonable inferences do not come into play. Mrs. Guillotte was clear and candid on the point. There was absolutely no contradictory evidence introduced at trial. Plaintiff saw the danger and proceeded with full knowledge of it.
Plaintiff raises the argument on appeal that she should be held to a relaxed standard of care because of her advanced age and that, therefore, she should not be barred from recovery. She seeks umbrage under a rule set out in 65A C.J.S. Negligence § 141, viz. Persons Under Mental Disability, which reads as follows:
“A person whose senses are blunted and mental faculties impaired by old age is not guilty of contributory negligence where his failure to use that degree of care which an ordinarily prudent person would use under the same or similar circumstances is due to such disability. In any event, the failure of an elderly person to take certain precautions does not constitute contributory negligence, so as to preclude recovery, where such failure was not the proximate cause of the injury suffered.” [Footnotes omitted][1]
Without reaching the issue of whether this rule would be applied in the proper set of circumstances, it would not apply in this case. The evidence showed that Mrs. Guillotte was very spry and alert. She was able to run her errands around the town on foot without any difficulty. Al *1192 though she wore glasses, there was nothing in the record to indicate that her corrected vision was less than normal. We do not see where the purpose underlying the rule would be served when the person seeking its protection is not suffering from the disabilities set forth in the rule. As was stated in the case of LaCava v. City of New Orleans, 159 So.2d 362, 364 (La.App. 4th Cir. 1964), “It is not advanced age alone, but rather disability resulting from advanced age (or other cause) which affects the test of care required.”
For the above reasons the judgment of the District Court is reversed and it is hereby ordered that plaintiff’s suit be dismissed at her costs, both at trial and on appeal.

REVERSED AND RENDERED.

WATSON, J., dissents and assigns written reasons.

. [Footnote by Appellate Court] We note that, even though the argument is raised on appeal, at trial plaintiff did not request jury instructions concerning this rule and, in fact, such instructions were not given.