417 So.2d 1319 (1982)
Hilton James VERRETT, Plaintiff-Appellant,
v.
CAMERON TELEPHONE COMPANY, Defendant-Appellee.
No. 82-70.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
Rehearing Denied August 30, 1982.
*1321 Jones, Jones & Alexander, J. B. Jones, Jr., Cameron, for plaintiff-appellant.
Jones, Tete, Nolen, Hanchey, Swift & Spears, William B. Swift, Lake Charles, for defendant-appellee.
Before FORET, STOKER and DOUCET, JJ.
DOUCET, Judge.
The plaintiff in this personal injury-electrocution action appeals from an adverse ruling on defendant's motion for summary judgment. We reverse.
The facts in the case are as follows: Plaintiff, Hilton James Verrett, was employed by Jefferson Davis Electric Cooperative, Inc., which shares poles with defendant, Cameron Telephone Co.[1] Verrett was dispatched to a pole referred to as Pole # 123 on December 3, 1979 to repair a line that had been broken the night before by a passing truck. Although both grounded and energized lines had been broken the night before, only the energized line was connected that evening to allow for temporary service. Plaintiff, an apprentice lineman, arrived at the site with a fellow-employee, Michael Smith, who had been working only three months as a groundman, which is a lineman helper.
Jefferson Davis Electric Cooperative and defendant Cameron Telephone Co. have joint use of the pole in question pursuant to an agreement whereby the latter is granted *1322 permission to put its telephone cable on the former's power poles in the area. Pole # 123 has three energized lines on the upper cross-arm. At the top of the pole is a neutral or ground wire which has a wire attached which is stapled on the opposite side of the pole down to the bottom of the pole and thus serves as a ground. The lower double cross-arm supports an energized line and a neutral line to complete service to the customer. The telephone transmission cable and customer service line is connected to the pole below the aforementioned double cross-arm supports.
The pole in question had no ground between the telephone cable and the power company ground. The record indicates that Cameron Telephone Co. grounds only about three or four poles per mile, whereas Bell Telephone Co. grounds its cable on every pole and warns its employees and the power company employees of the danger created by the grounding. Nevertheless the telephone cable on Pole # 123 did serve as an extremely dangerous ground to a lineman due to its being grounded at poles nearby.
Verrett approached the pole but, before ascending he used a long hot stick to disconnect the hot line clamp which was attached to the overhead energized lines, because he would be working in the vicinity. He then climbed the pole and resagged the broken neutral service line. After he finished connecting the neutral serviceline he observed that one of the hot service lines had a sag, so he attached a come-along to take up the slack and created a pig-tail that hung down from the connection of the cross-arm, when somehow the excess wire came into contact with one of the upper energized lines. Plaintiff claims he was holding the energized line with leather gloves, his left foot was spiked into the dry pole, but unfortunately, his right foot was on the grounded telephone cable. The electrical current, 7,620 volts, traveled through his body and out through his right leg. The groundman below, Smith, observed flames coming out of the plaintiff's hands and foot. Exactly how the accident occurred is unknown as Smith was not watching at the time and Verrett does not remember precisely what happened at the time of his electrocution. The result of that electrocution is that plaintiff is now a triple amputee.
Verrett claims he did not know the telephone line was grounded and that neither he nor any other Jefferson Davis Electric Cooperative employee had ever been warned by Cameron Telephone Company or anyone else not to place a foot on phone cables. He claims that the lineman who trained him often stepped on phone cables. Had he known and avoided the telephone cable by resting his right foot on the pole, his injuries would have been minor.
Verrett thereafter filed suit against Cameron Telephone Co. alleging fault based upon ordinary negligence pursuant to Civil Code Article 2315 and strict liability under Article 2317. Defendant subsequently filed a motion for summary judgment whereupon the trial judge ruled that the material facts were uncontroverted, that contributory negligence was easily established, and that as a matter of law defendant could not be held strictly liable. Plaintiff appeals.
Preliminarily, it should be noted that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits show no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. C.C.P. Art. 966. Papers supporting the position of the party moving for summary judgment are to be closely scrutinized, while the opposing papers are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La. 1981). A summary judgment is not appropriate when it is based upon affidavits and accompanying pleadings and other documentary evidence to establish subjective facts such as motive, intent, good faith or knowledge. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3rd Cir. 1974), writ ref. 302 So.2d 308 (La.1974), Fontenot v. Aetna Insurance Co., 225 So.2d 648 (La.App. 3rd Cir. 1969). Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubts should be *1323 resolved in favor of a trial on the merits. Cates v. Beauregard Elect. Coop., Inc., 328 So.2d 367 (La.1976); Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Clement v. Taylor, 382 So.2d 231 (La.App. 3rd Cir. 1980).
Nor is summary judgment appropriate as a vehicle for the disposition of a case, the ultimate decision in which will be based on opinion evidence or the judicial determination of subjective facts. Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1st Cir. 1970); Smith v. Preferred Risk Mutual Ins. Co., 185 So.2d 857 (La.App. 3rd Cir. 1966).
We note that the accident involved occurred before our comparative negligence statute (Act 439 of 1979) went into effect, therefore, the issue of the statute's applicability to strict liability claims is not before this court. Furthermore it has not been urged that comparative negligence be applied pursuant to former Civil Code, Article 2323, repealed by Act 431 of 1979, which provided: "The damage caused is not always estimated at the exact value of the thing destroyed or injured; it may be reduced according to circumstances, if the owner of the thing has exposed it imprudently." cf: Malone, Comparative NegligenceLouisiana's Forgotten Heritage, 7 La.L.Rev. 125 (1945).
Both parties rely upon the recent Supreme Court decision in Kent v. Gulf States Utilities, 418 So.2d 493, (La.1982), rendered April 30, 1982[2], in support of their respective arguments. In Kent, a construction worker employed in the building of a new highway came into contact with an electrical line 25' overhead when using a steel rake used to engrave anti-hydroplaning grooves into the highway. The court therein concluded that Gulf States had breached no duty as its lines were insulated by isolation and it was unforeseeable that the construction worker would come into contact with the energized lines using a 30 foot pole. Under the circumstances, Gulf States was not required to take additional precautions. In reaching this result, the court stated, in discussing liability for damages caused by things:
"In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm.
In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective). The resulting liability is strict in the sense that the owner's duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which usually gives rise to a duty under negligence concepts. Under strict liability concepts, the mere fact of the owner's relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody. If the owner breaches that absolute duty to discover, he is presumed to have discovered *1324 any risks presented by the thing in custody, and the owner accordingly will be held liable for failing to take steps to prevent injury resulting because the thing in his custody presented an unreasonable risk of injury to another.5
"Thus, while the basis for determining the existence of the duty (to take reasonable steps to prevent injury as a result of the thing's presenting an unreasonable risk of harm) is different in C.C. Art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same. The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends upon the particular facts and circumstances of each case." (emphasis added)
"Accordingly, in a strict liability case in which the claimant asserts that the owner's damage-causing thing presented an unreasonable risk of harm, the standard for determining liability is to presume the owner's knowledge of the risk presented by the thing under his control and then to determine the reasonableness (according to traditional notions of blameworthiness) of the owner's conduct, in the light of that presumed knowledge."
* * * * * *
"In the present case Gulf States knew that its lines were "hot" and were not wrapped with insulating material, a condition which presents a grave risk of harm to a person who comes in close proximity to the lines while in contact with the ground or a grounded object. (This risk was indeed a cause-in-fact of Kent's injury in this case.) Because of Gulf States' knowledge of the condition of its lines, it is unnecessary in this case to presume any knowledge of a risk of harm created by Gulf States' lines in this case, and C.C. Art. 2317's imposition of an absolute duty to discover the risks presented by the thing in its custody is not helpful to the determination of Gulf States' liability in this case. That liability as custodian of the thing depends on an analysis of the reasonableness of Gulf States' conduct in protecting persons against harm resulting from the risk of which Gulf States was well aware, which is essentially a negligence determination."
5 The theory is that the owner-guardian is regarded as the risk-creator because of his relationship with the thing which presents the risk. As between him and the faultless victim injured as a result of the risk, the owner-guardian theoretically should bear the loss, because he was in the best position to discover the risk and to prevent the injury." (Footnote by the court in Kent)
Kent does not mandate affirmation as suggested by defendant; the case is distinguishable on its facts, the most notable of which is that plaintiff therein was allowed his day in court. Furthermore, Kent was forewarned of the danger immediately prior to his injury whereas Verrett raises the issue of whether the pole should have contained a warning observable before a lineman's assent upon a pole or whether any warning should have been issued by defendant whatsoever. Additionally, that the cement upon which Kent was standing would serve as a ground was apparent, and the ease of association between the danger presented by a lineman climbing a joint-use pole is greater than the foreseeability of contact with a 30' aluminum rake, as in Kent.
The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends upon the particular facts and circumstances of each case. Kent v. Gulf States Utilities, supra. We do not believe the scope of defendant's duty in this case can be determined by way of summary judgment.
Although the court in Kent held, inter alia, that the transmission of electricity for public consumption was not an ultrahazardous activity rendering the enterpriser absolutely liable "absent fault", that portion of the opinion is inapplicable to our review inasmuch as appellant has not urged such a basis of liability. Nonetheless in this respect we note that Justice Watson dissented, being of the view that the heavy construction activity in close proximity to the *1325 electrical lines rendered the transmission of deadly voltages of electricity an ultrahazardous activity. He emphasized that the question of Gulf States' liability is a jury question. The logical extension of the Kent case, and division of opinion therein, is that reasonable minds would not inevitably concur, on the facts before the court herein, that a summary judgment is warranted.
Defendant emphasizes its compliance with the National Electric Safety codevis-a-visgrounding of telephone lines. However, conduct conforming to industry standards is not prima facie proof of lack of negligence. McKowen v. Gulf States Utilities Co., 358 So.2d 675 (La.App. 1st Cir. 1978); Burley v. Louisiana Power & Light Co., 319 So.2d 334 (La.1975). In fact defendant has cited no case on point relative to the failure of a pole user to warn of its grounding procedures.
Furthermore, defendant's reliance on Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976) is misplaced. The court therein stated:
"Uninsulated electric lines carrying high voltage electricity are extremely dangerous. In some situations there might be recovery for injury in spite of fault on the part of the injured person, but not where, as here, one is hurt while in a place he has no right to be, in an effort to accomplish no lawful purpose, while aware of the danger involved." (emphasis added)
328 So.2d 367, at 370.
Uncontroverted is that plaintiff had a right to ascend the pole in an effort to accomplish a lawful purpose. Disputed is whether plaintiff was aware of the danger involved. Cates is not apropos.
Similarly, Simon v. Southwest Louisiana Electric Membership Corp., 390 So.2d 1265 (La.1980) is of no aid to defendant. There, suits were brought for wrongful death resulting when pipe used in drilling a water well touched a high voltage line owned by defendants. After trial on the merits, the jury returned verdicts favorable to defendants. The Supreme Court affirmed, stating:
"We recognize that electric companies who utilize and maintain high power lines are required to exercise the utmost care to reduce hazards to life as far as is practicable. Nessmith v. Central La. Electric Co., 257 So.2d 744 (La.App. 3d Cir. 1972), writ den., 259 So.2d 921, 922 (La.1972). If it should be reasonably anticipated that persons may come into contact with electric lines, the operator of those lines is required to insulate them, or to give adequate warning of the danger, or to take other proper and reasonable precautions to prevent injury. Nessmith, supra." (emphasis added)
390 So.2d 1265, at 1267.
On its facts Simon is clearly distinguishable as the essence of plaintiff's complaint herein is his right to trial to determine whether defendant should have reasonably anticipated plaintiff's contact with the grounded telephone cable and what warning was required in light of the danger posed. Reasonable minds may conclude that the economy of not warning such linemen is outweighed by the hazard it presented.
For the same reasons, Williams v. City of Alexandria, 376 So.2d 367 (La.App. 3rd Cir. 1979), writ ref. 378 So.2d 432 (La.1979), wherein a judgment on jury verdict, finding defendant utility owed no duty to warn an injured worker where his contact was not foreseeable, was affirmed, is inapplicable to the case at bar.
See also Nettles v. Bowlin, 386 So.2d 658 (La.App. 1st Cir. 1980) wherein the First Circuit reversed a summary judgment adverse to plaintiff utility apprentice lineman injured when climbing a joint-use pole used by defendant telephone company.
In determining whether a thing poses an unreasonable risk of harm under Civil Code Article 2317 many facts are considered, including: (1) the probability of risk occurring, (2) the gravity of the consequences if it does, and (3) the burden of adequate precautions. Other related considerations include the social priorities attached to the particular conduct, the degree of culpability assignable to each party's conduct, *1326 the economic ability of the parties and their relationship to the instrumentality of injury, the foreseeability of the particular injury had the defect been known, the location of the incident, and the voluntariness or deliberateness with which the victim encounters the risk-creating thing. In light of these principles, upon remand, a reasonable trier of fact might conclude that the probability and gravity of risk is so great, and the relative cost of defendant's precaution is so minimal, that appellees' inconsistent grounding procedures, without warning, created an unreasonably dangerous defect.
Dr. Ronald Paul Photen, plaintiff's expert witness and a professor at Oklahoma State University, testified as follows with regard to the procedure employed by defendant:
"Its [sic] my opinion that the installation is unreasonably dangerous, not just because it's groundedalthough that does provide the danger, having grounded the equipment that can be touched while you're simultaneouslyor being contacted by a high voltage line clearly is a danger. The fact that it would be so easy to warn that this equipment is grounded and there was no warning there is what makes the danger unreasonable. Its [sic] unreasonable because it could so easily be mitigated, the danger substantially reduced, by a simple tag or warning label of some kind."
Working in the vicinity of high voltage electrical wires is not per se contributory negligence, nor is it an assumption of the risk. Dyson v. Gulf Modular Corp., 338 So.2d 1385 (La.1976); Harper v. New Orleans Public Service, Inc., 300 So.2d 546 (La. App. 4th Cir. 1974), writ denied 303 So.2d 182 (La.1974); Barrois v. Service Drayage Co., 250 So.2d 135 (La.App. 4th Cir. 1971). Verrett's knowledge of the properties of electricity does not, of itself, constitute assumption of the risk involved.
Similarly, defendant's contention, that Verrett's failure to blanket or insulate the lines above his work bars his recovery as a matter of law, must also be rejected. Mr. Fulton, in affidavit, suggested that plaintiff's action in this respect could be considered ordinary and reasonable, hence a factual dispute exists in this regard also. Finally, as to appellee's assertion that the method plaintiff employed to resag the line was contributorily negligent and/or an assumption of the risk, again there is contradictory evidence. (See the affidavit of Mr. Fulton and Dr. Rhoten's deposition).
The court in Dyson, supra, held, inter alia, that the failure of electrical lineman to wear rubber gloves was not negligence per se, nor was his failure to insulate the energized lines with rubber blankets per se negligence. Here, plaintiff was wearing leather rather than rubber gloves because he claims that rubber gloves were not available. Whether his conduct bars recovery under the circumstances presented must be determined upon trial on the merits.
With respect particularly to defendant's strict liability defense, we make the following observations. First, however, we note that Kent v. Gulf States Utilities, supra, is not a startling new development in principles of liability and defenses thereto, as suggested by defendant. Although acknowledging that the "distinction between negligence cases and strict liability cases (such as Loescher) has largely been either misunderstood or completely disregarded", the Kent decision neither overturned nor disapproved of any precedent expressly. The court merely expounded upon and clarified earlier decisions. Accordingly, we look to prior jurisprudence vis-a-vis appellee's defense.
Under what circumstances a plaintiff's contributory negligence should bar his recovery in a strict liability case should be developed on a case-by-case basis. Dorry v. LaFleur, 399 So.2d 559 (La.1981). Generally, ordinary contributory negligence is not available as a defense in a strict liability action based on Civil Code Article 2317. Rodrigue v. Dixilyn Corp., 620 F.2d 537 (5th Cir. 1980) per Tate, J. As Professor Stone has stated, contributory negligence is "properly plead only to an action based on negligence". Stone, 12 Louisiana Civil Law Treatise: Tort Doctrine, Section *1327 56, p. 76. Instead, where the theory upon which recovery is sought is one of strict liability liability may be avoided only upon proof that the damage is caused by (a) fault of the victim, (b) fault of a third person, or (c) an irresistible force. Loescher v. Parr, 324 So.2d 441 (La.1975). Victim fault is not synonymous with contributory negligence, as suggested by defendant. Rather, victim fault is usually in the form of assumption of risk, that is, voluntary and unreasonable use of the product with full knowledge and appreciation of its defect and the danger involved. LeBouef v. Goodyear Tire & Rubber Co., 623 F.2d 985 (5th Cir. 1980); Perkins v. Emerson Electric Co., 482 F.Supp. 1347 (W.D.La.1980); Wilson v. Voss, 361 So.2d 312 (La.App. 1st Cir. 1978); Rodrigue v. Dixilyn Corp., supra. It must be shown that plaintiff voluntarily and unnecessarily exposes himself to a known danger. Tirante v. Gulf States Utilities, 412 So.2d 128 (La.App. 1st Cir. 1982), and cases cited therein. The distinction between negligence and strict liability cases lies in the fact that inability of a defendant to know or prevent the risk is not a defense in a strict liability case but precludes a finding of negligence. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980). Applying the principles hereinabove to the defense asserted we conclude the summary judgment must be reversed.
In conclusion, the reasonableness of plaintiff's conduct (or lack thereof) must be viewed in light of the hazard created by defendant, and such a determination cannot be made, under the circumstances presented, on a motion for summary judgment. The trial judge erred in substituting the summary judgment remedy for a trial on the merits.
For the reasons assigned, the judgment appealed from is reversed and the case remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
STOKER, J., concurs.
NOTES
[1] Also made defendant herein is the telephone company's liability insurer, Hartford Accident and Indemnity Company.
[2] We have been informed that an application for rehearing has, as of the date of this writing, been filed by plaintiff in Kent, thus the decision is not final. Nevertheless we will address the applicability of the decision upon the assumption that its holding remains intact as is presently written.