FRED W. JONES, Jr., Judge.
Plaintiff sued a landowner and its dirt contractor for personal injuries sustained when a motorboat in which plaintiff was riding as a passenger struck a submerged piece of equipment (left by the contractor) in a flooded field (belonging to the landowner) lying adjacent to the Ouachita River in Morehouse Parish.
From a judgment sustaining motions for summary judgment filed by defendants, plaintiff appeals, contending the trial judge erred in holding (1) that since plaintiff was boating and enjoying a recreational diversion on the landowner’s property when injured, defendants enjoyed immunity from liability under La.Revised Statutes 9:2791[1] *462 and (2) that since plaintiff was a trespasser on the landowner’s property, defendants only owed him the duty of refraining from willfully, intentionally and maliciously inflicting injuries.[2]
Finding that there was no genuine issue as to a material fact (as conceded by plaintiff in brief), and that, for the reasons hereinafter explained, defendants were entitled to judgment as a matter of law,[3] we affirm.
In his petition plaintiff alleged:
“On or about April 22,1980, Willie Ept-ing was a passenger in a boat operated by Huey Rhodes. At the time, Mr. Willie Epting was employed by the U.S. Fish and Wildlife Service, as was Mr. Huey Rhodes. At the time of the accident, Mr. Huey Rhodes and Mr. Willie Epting were in the course and scope of their employment with the U.S. Fish and Wildlife Service. The boat Mr. Epting was a passenger in was an aluminum eighteen foot boat with an outboard Mercury engine. The boat was proceeding along the Oua-chita River in Morehouse Parish on what appeared to be river bed area. Suddenly and without warning, the boat struck an under water structure which had been constructed and put in place by HDO, Inc., and/or was put in place on HDO, Inc. property with its consent. At the time of impact, Mr. Epting was thrown forward in the boat and received severe injuries as hereinafter delineated.”
Both defendants filed motions for summary judgment. At the trial thereof depositions of the following individuals were filed in evidence: the plaintiff, Epting; Rhodes, the boat operator and plaintiff’s fellow employee; Oliver, General Manager of the landowner, HDO, Inc.
According to the aerial photograph of the accident site filed in evidence and explanatory testimony, the following sketch generally depicts the area in question together with relevant landmarks.

Epting testified in his depositions that on April 22, 1980, the day of the accident, he was riding down the Ouachita River in a motorboat operated by his fellow employee, Rhodes. The two were returning to Rhodes’ dwelling from a mission on the river connected with their employment. When they came to a bend in the river (shown in the upper part of the sketch) Rhodes elect *463 ed to take a shortcut across a submerged field lying to the east of and adjacent to the river. During this excursion away from the river channel, plaintiff was using his employer’s camera to take photographs of interesting scenery. While traversing the flooded field, the boat suddenly struck a submerged metal structure. Plaintiff was thrown violently about in the boat, sustaining the serious injuries for which this suit was instituted.
In his depositions Rhodes stated that he had traveled on the Ouachita River for over 20 years and was very familiar with its channel and characteristics. He knew that the submerged field across which he took the shortcut when plaintiff was injured belonged to HDO, Inc. In this area the river channel was marked by a line of trees. According to Rhodes, this particular field was dry six to eleven months out of each year. Rhodes stated that when the river overflowed onto this field it was a common practice for fishermen and hunters to drive their boats across it.
Rhodes testified that he was returning to the river channel, driving at a speed of 20-25 miles per hour, when the boat struck a metal hoist, the top of which was about two inches under the water.
Rhodes said that he had observed the metal tower (8-10 feet high and 12 feet wide) in the field before the overflow some two or three months prior to the accident, but conceded that he miscalculated its location on the day in question. According to Rhodes, the hoist had been entirely under water for about three or four weeks before the accident.
Oliver explained that HDO, Inc. (owner of thousands of acres of area farmland) had contracted with Charles W. Greeson & Sons, Inc. (“Greeson”) to build up and strengthen its levee depicted on our sketch. Greeson had placed the metal hoist or tower on the field involved in this suit to use in connection with overhauling its equipment.
Oliver stated that heavy winter rains caused a sudden rise in the Ouachita River, forcing Greeson to stop its work on the levee. The contractor was able to get some of its equipment out, but had to leave a couple of dragline buckets and the metal hoist. Oliver admitted that no markers were left on the hoist to warn boaters of its location. He also testified that he had observed individuals boating across his employer’s field when it was covered by overflow water.
As revealed by this summary of the evidence, in ruling on the motions for summary judgment the trial judge was not confronted by any genuine issue as to a material fact. Therefore, the question on appeal is whether, based on these facts, the defendants were entitled to summary judgment as a matter of law.

Liability of Landowner, HDO, Inc.

Plaintiff argues that the landowner owed a duty to boaters traversing its overflowed field to either buoy or otherwise mark the location of the submerged metal hoist. HDO, Inc. denies that, under the facts of this case, any such duty existed.
Our Supreme Court indicated in Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976) that the traditional categories of invitee, licensee and trespasser are of little assistance in determining the liability of a landowner to a party injured on his property. It was suggested that the proper test to be applied in premises liability cases, under La.C.C.Arts. 2315 and 2316, is whether the defendant landowner acted as a reasonable man in view of the probability of injuries to others. It was further noted that the claimant’s status as a trespasser, licensee or invitee might, in light of the facts giving rise to such status, have some bearing on the question of liability, but that status is not determinative. This standard was later applied in Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976).
Turning to the facts of this case and delineating the scope of the landowner’s duty to this plaintiff, we find it significant that: the bank of the river, though overflowed, was clearly marked by a line of trees; the boat operator deliberately left the protected channel of the river to tra *464 verse the property of HDO, Inc., without the permission of the landowner; occupants of the boat should have been aware of the danger of hitting submerged objects in a field of this nature; sole purpose for going across the flooded field was to take a shortcut home; the boat operator was proceeding at a relatively fast speed; and the level to which the flood water would rise (the objects it would cover) was unpredictable.
Considering these critical factors, we conclude that HDO, Inc. could not have reasonably been expected to anticipate the occurrence of a boating accident of this nature and the consequent necessity of placing a marker on the hoist to warn these boaters of its presence. Therefore, the trial judge correctly decided that HDO, Inc. was entitled to summary judgment as a matter of law.
Having disposed of the issue of the landowner’s liability on this basis, it is unnecessary for us to consider the applicability of La.R.S. 9:2791.

Liability of the Contractor, Greeson

As to the contractor, again employing the duty/risk analysis, the question is: did the contractor, as owner of the hoist left on the landowner’s property, have a duty to boaters to mark the location of the metal tower?
Also relevant to this “scope of duty” analysis are those factors considered in connection with our delineation of the landowner’s duty to these boaters. Further, there was no evidence that Greeson was aware of the likelihood of boaters traversing this field. There was, in addition, no showing that the contractor should have anticipated the flood waters would rise high enough to entirely submerge the metal hoist.
Consequently, as we ruled with reference to the landowner, Greeson could not have reasonably been expected to anticipate the occurrence of this boating accident and the necessity of marking the location of the hoist to warn these boaters of its presence. The trial judge correctly held that the contractor was entitled to summary judgment as a matter of law.
Again, it is unnecessary for us to consider the effect of La.R.S. 9:2791 upon Greeson’s liability.

Decree

For the reasons set forth above, we affirm the judgment of the district court sustaining the motions for summary judgment, at appellant’s cost.

. § 2791.
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for *462 such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of. this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word “premises” as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.

. Plaintiff also contended the trial judge erred in finding that admiralty jurisdiction did not apply, but conceded in his brief that this issue is not before the court on appeal since it was raised only in opposition to Greeson’s exception of prescription, which was not ruled upon by the trial court.

. La.C.C.P. Art. 966 provides in pertinent part:
The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed....
... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.