542 So.2d 622 (1989)
Daniel I. CAPLAN
v.
PELICAN HOMESTEAD AND SAVINGS ASSOCIATION.
No. 88-CA-834.
Court of Appeal of Louisiana, Fifth Circuit.
April 12, 1989.
*623 Monica Surprenant, Baldwin & Haspel, Metairie, for defendant-appellant, Pelican Homestead and Sav. Ass'n.
Irl R. Silverstein, Gretna, for plaintiff-appellee, Dr. Daniel I. Caplan.
Before KLIEBERT, BOWES and GOTHARD, JJ.
BOWES, Judge.
Defendant/appellant, Pelican Homestead and Savings Association (hereinafter Pelican Homestead) appeals a judgment of the trial court which granted a motion for summary judgment filed by plaintiff/appellee, Dr. Daniel Caplan, and overruled a cross-motion for summary judgment, which was filed by Pelican Homestead. We annul in part, affirm in part and remand.
Pelican Homestead serves as the lender and is the mortgagee on seven (7) mortgages executed by appellee, or mortgagor. These mortgages were executed on the following dates and are in the following amounts:

1) December 22, 1983 $ 32,400.00
2) February 9, 1984 55,000.00
3) May 3, 1984 64,000.00
4) June 14, 1984 44,000.00
5) August 23, 1984 114,800.00
6) December 13, 1984 86,400.00
7) September 19, 1985 34,800.00
 ___________
 Total $431,400.00

The seven mortgages have as their security nine (9) separate pieces of residential rental property. For each mortgage, Dr. Caplan signed a Loan Commitment Agreement which stated in pertinent part:
"8. Notice is hereby given that you have the right to freely select the person or organization rendering insurance services; however, such insurance services are subject to the *624 refusal by our Association to grant the loan if the lender believes on reasonable grounds that it will afford insufficient projection [sic]."
Each of the seven mortgages executed by Dr. Caplan contains the following provision:
5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.
All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.
Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is not economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.
Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.
At the loan closings and up until February, 1988, the appellee provided evidence of insurance on the nine properties with an insurer acceptable to Pelican Homestead. In mid-February, 1988, Pelican Homestead received a letter from an insurance agent, Bacino & Associates, Inc., enclosing new certificates of insurance for the nine properties. The certificates were issued by Pelican State Mutual Insurance Company and contained a deductible of $2,500.00 for fire, extended coverage and windstorm insurance, and a deductible of $50,000 for flood insurance.
Ms. Julia Cummings, assistant vice-president for the Escrow Servicing Department, advised Dr. Caplan by telephone that Pelican Homestead was unable to accept insurance underwritten by Pelican State Mutual Insurance Company because that company lacked an A.M. Best rating (an insurance rating service) and the proposed deductibles on the certificates were above those acceptable to Pelican Homestead. This telephone conversation was followed by a letter dated February 22, 1988, from Ms. Cummings to appellee returning the insurance certificates.
Bacino and Associates resubmitted the certificates to Pelican Homestead. Prior to receipt of the certificates, Ms. Cummings again wrote to Dr. Caplan on March 4, 1988, and advised him that the insurance certificates were unacceptable because Pelican State Mutual Insurance Company was *625 not rated by A.M. Best and the deductibles were above the maximum of $500.00 acceptable to Pelican Homestead. On March 9, 1988, counsel for Dr. Caplan wrote a letter to Ms. Cummings stating that Dr. Caplan would submit a letter of credit from a local financial institution guaranteeing payment of the deductible amount. On March 16, 1988, counsel for appellants wrote a letter to Dr. Caplan advising him that Pelican Homestead would not accept the coverage; and, if proof of coverage from another company was not sent to Pelican Homestead, forced placed insurance would remain on the property.
On March 30, 1988, Dr. Caplan filed a petition for declaratory judgment declaring the actions of Pelican Homestead in rejecting the insurance coverage provided by Dr. Caplan to Pelican Homestead, with Pelican State Mutual Insurance Company, to be unreasonable, and, therefore, to be in violation of the terms and conditions undertaken by and between the parties in the various acts of mortgages existing between said parties. Subsequent to the answer filed by appellant, Dr. Caplan filed a motion for summary judgment on July 7, 1988, arguing that there was no genuine issue of material fact to be considered by the district court in determining that Pelican Homestead did not act reasonably in rejecting the insurance coverage provided by Dr. Caplan. On August 23, 1988, Pelican Homestead filed a cross-motion for summary judgment arguing that there was no genuine issue of material fact to be considered by the district court in determining that Pelican Homestead had the express right to determine whether a prospective insurer was acceptable; and acted reasonably in employing the A.M. Best rating system to make such a determination. A hearing on both motions was held on September 2, 1988, and the district court judge ruled in favor of Dr. Caplan, finding Pelican Homestead did not act reasonably in rejecting the insurance coverage provided by Dr. Caplan, and, therefore, violated the terms and conditions undertaken by and between the parties in the various acts of mortgages existing between the parties.
Pelican Homestead appeals and presents three assignments of error for our consideration:
"1. The district court erred in granting Plaintiff's Motion for Summary Judgment because there existed genuine issues of material fact which should have precluded the granting of a summary judgment motion in favor of the plaintiff.
2. The weight of the evidence presented by Pelican Homestead clearly established that Pelican Homestead had acted reasonably in relying on the A.M. Best Insurance Reports and not accepting coverage by Pelican State Mutual Insurance Company.
3. The district court erred in dismissing Pelican's Motion for Summary Judgment; Pelican's motion should have been granted."
All assignments of error will be consolidated for discussion.
Both the appellant and the appellee state in brief that the issue of this case is whether or not Pelican Homestead acted reasonably in making the decision to deny the insurance coverage submitted by Dr. Caplan. Actually, in our opinion, the real issue is whether or not summary judgment was providently granted. It is well established that a motion for summary judgment is not a substitute for a trial on the merits and that the mover, to prevail in his motion, must carry a heavy burden of proof. Thomas v. Advance Mortg. Corp., 445 So. 2d 1302 (La.App. 5 Cir.1984); Ballard v. Jayakrishnan, 427 So.2d 665 (La.App. 5 Cir.1983).
In Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087 (La.1981), the Louisiana Supreme Court held:
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966;
Only when reasonable minds must inevitably conclude that the mover is entitled to *626 judgment as a matter of law based on the facts presented to the court is a summary judgment warranted. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Chaisson v. Domingue, 372 So.2d 1225 (La.1979). When there are contradictions on factual issues created by depositions and affidavits, a party is not entitled to summary judgment. Gatlin v. Coca-Cola Co., 461 So.2d 452 (La.App. 5 Cir.1984). All of these principles are now well established law.
The burden to show there is no genuine issue of material fact in dispute is upon the mover of the summary judgment. Any such doubt is resolved against the mover and against the granting of a summary judgment and in favor of a trial on the merits. Chaisson v. Domingue, supra; Ruschel v. Wesbak Park, 466 So.2d 584 (La.App. 5 Cir.1985); Pellegal v. Dureau, 427 So.2d 55 (La.App. 4 Cir.1983).
A summary judgment is not appropriate when it is based on affidavits and accompanying pleadings and other documentary evidence to establish subjective facts such as motive, intent, good faith or knowledge. Verrett v. Cameron Telephone Co., 417 So.2d 1319 (La.App. 3 Cir. 1982), writ denied 422 So.2d 164 (La.1982). Neither is a summary judgment the appropriate vehicle for the disposition of a case when the ultimate decision will be based on opinion evidence or the judicial determination of subjective facts.
As we have already observed above, both parties agree that the issue of this case is whether or not Pelican Homestead acted reasonably in making the decision to deny the insurance coverage submitted by Dr. Caplan. At the hearing on the Motion for Summary Judgment, the trial judge stated:
"Okay, I think I understand the situation. According to what I have heard, you know, I think that Pelican Homestead did not act reasonably in the case, and, therefore, I'll grant a Motion for Summary Judgment to the plaintiff."
Under the circumstances of this case, the use of the term "reasonable", without further definition or explanation, is subjective. Appellee argues that Pelican Homestead has no written policy on the acceptance or rejection of insurance policies and, therefore, rejection of his submitted policies was unreasonable. We disagree. The absence of written policy, in and of itself, is not determinative of whether or not Pelican Homestead's action was unreasonable. The reasoning behind the policy adopted by Pelican Homestead in this regard must be reviewed and examined for its reasonableness as it affects ordinary business practice. Until such a review can be made after a full trial on the merits, with the "pros" and "cons" examined by the presentation of evidence and testimony, and cross-examination, the issue of whether Pelican Homestead acted reasonably cannot be resolved. Consequently, it was error for the trial judge to grant a summary judgment in favor of Dr. Caplan and against Pelican Homestead in this case.
Pelican Homestead also argues that it was error for the trial court to overrule its cross-motion for summary judgment. For all of the reasons expressed above, we must conclude that Pelican Homestead was not entitled to a summary judgment in this case, any more than Dr. Caplan was. Therefore, that portion of the trial court judgment which overruled appellant's cross-motion for summary judgment is affirmed.
Accordingly, the judgment of the trial court is annulled and set aside insofar as it granted appellee's motion for summary judgment. The judgment of the trial court is affirmed insofar as it overruled the appellant's cross-motion for summary judgment.
This case is remanded to the trial court for a trial on the merits and/or further proceedings consistent with this opinion. Appellee is to pay all costs of this appeal.
ANNULLED IN PART, AFFIRMED IN PART AND REMANDED.
KLIEBERT, J., concurs with written reasons.
*627 KLIEBERT, Judge, concurring.
The essence of Caplan's contention is that "reasonable" equates to "rated by Best." In my view "reasonable" depends on the facts involved in this particular situation and not on whether the particular insurer is rated in Best. There is therefore a genuine issue as to material facts. Accordingly, I concur in the results reached by the majority but not necessarily for the reasons stated in the opinion.