566 So.2d 163 (1990)
Thomas ROBERTS, etc.
v.
The LOUISIANA COCA-COLA BOTTLING COMPANY, et al.
No. 89-CA-0564.
Court of Appeal of Louisiana, Fourth Circuit.
July 23, 1990.
Rehearings Denied September 19, 1990.
*164 Lawrence J. McGrath, II, New Orleans, for plaintiffs-appellants.
Sessions, Fishman, Boisfontaine, Nathan, Winn, Butler & Barkley, Walter C. Thompson, Jr., Thomas E. Schwab, New Orleans, and Freeman & Hawkins, Joe C. Freeman, Jr. and Steven M. Lore, Atlanta, Ga., for defendant-appellee, Coca-Cola Co.
Joseph I. Giarrusso, Jr. and Thomas P. Anzelmo, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendants-appellees, Sewell Plastics, Inc.
Before BARRY, BYRNES, LOBRANO, WARD and PLOTKIN, JJ.
BARRY, Judge.
Thomas Roberts, individually and on behalf of his minor son, James Roberts, appeals a summary judgment which dismissed with prejudice Sewell Plastics, Inc. and the Coca-Cola Company from this personal injury suit based on an exploding plastic bottle.
Mr. Roberts filed a petition for damages alleging negligence and strict liability as to the Louisiana Coca-Cola Bottling Company, Ltd., [La. Coke] and its insurer, Travelers Insurance Company [Travelers], the Coca-Cola Company, Sewell Plastics, Inc. [Sewell] and the Aluminum Company of America (ALCOA). The defendants filed various third party demands against each other. ALCOA's request for summary *165 judgment was granted and its third party demands dismissed without prejudice. The Coca-Cola Company (which produces the syrup, controls the labeling and advertising) and Sewell (which manufactures the plastic bottle) were also granted summary judgment.
Sewell filed excerpts from depositions of Thomas Roberts, James Roberts, Claude Salas, and Dr. Robert Kadlec as well as Dr. Kadlec's report with attachments and copies of photo exhibits.
James Roberts said he was helping his father clean a pool at Pelican Apartments for the Fourth of July weekend. His father had a maintenance job at the complex and James' cousin, Claude Salas, was helping. The pool was littered with beer cans, wood, debris, and a capped two liter plastic Coca-Cola bottle (partially full) was floating. James said the pool's water was green. There was no pool light and it was impossible to see below the water. Mr. Roberts pushed the trash toward James and he picked it out of the pool and tossed it into a pile. James grabbed the Coke bottle with his right hand at the top, then placed his hand around its center and was in the process of standing up when the bottle exploded.
Thomas Roberts stated that the pool had not been used for three or four days. On the night of July 2, 1986 Mr. Roberts, his son Jimmy, and Claude Salas were cleaning the pool. The water was greenish and the underwater pool light was out. Trash in the pool included a capped Coke bottle which was floating as if it was partially filled and weighted down. The three men were taking out the debris and throwing it on the side. Mr. Roberts pushed the Coke bottle toward Jimmy who grabbed the bottle and "it just went off." Mr. Roberts saw blood on Jimmy and took him to the hospital. Mr. Roberts did not know whether the bottle was plastic and asked Claude to get the bottle. Claude returned with three bottle parts.
Claude Salas testified there was garbage around and in the pool, including plastic two-liter bottles. Claude said he heard a loud pop from the opposite end of the pool where Jimmy and Mr. Roberts were working. Mr. Roberts told him that Jimmy's eye had been injured and asked him to look around the pool for a Coke bottle. Claude said he found three parts of a Coke bottlethe black base, middle, and top which was capped and he brought the parts back to the hospital.
Dr. Robert Kadlec, an expert mechanical and aeronautical engineer, was hired by Travelers Insurance Company to examine the plastic bottle parts. By deposition he stated that he did not find anything wrong with the thickness distribution of the bottle. There was deformation only where the fracture occurred which was due to extreme overpressure of 185 to 200 PSI inside the bottle. He conducted a series of tests on similar bottles and rupture occurred when pressure was over 200 PSI. He performed eleven tests on Coke two-liter plastic bottles and was unable to produce a fracture pattern similar to the three parts found by the pool. He did obtain a similar result from two two-liter 7-Up bottles.
In some tests Dr. Kadlec heated the bottle liquid to high temperatures and concluded that heat could not cause the plastic to rupture. He stated that a temperature of 150 to 200°F would generate 72 PSI of pressure which would distort but not cause a rupture. The pool and bottle temperature was about 80°F. He said that Coke liquid in a plastic bottle exposed to the sun does not generate explosive internal pressure when heated by the sun. Dr. Kadlec concluded that something other than the Coca-Cola liquid was in the bottle.
Dr. Kadlec stated that the cap did not blow off the bottle. The cap's measurements conformed very closely with a cap from another Coca-Cola bottle. He stated the cap could have been removed in the regular counter-clock direction and put back on the bottle. Dr. Kadlec testified that the cap was on the bottle when it exploded. The top part of the bottle was ejected and propelled in one direction and struck a hard, flat object (not a human body) which caused dents in the top of the cap and the finish of the bottle. The middle part of the bottle was ejected with a lot *166 of force in the opposite direction and struck a flat surface causing it to crush and buckle. A small number of fragments which were not retrieved were blown outward and one fragment most likely struck the plaintiff. Dr. Kadlec stated that he did not make a chemical analysis on the bottle because he was not to perform destructive testing.
Dr. Kadlec's summary report states that the aluminum roll-on cap was quite similar to a well-formed cap that had been removed in the usual counter-clockwise direction. The cap did not conform to a cap which had been ejected from a bottle under high pressure, and the dent on the top is consistent with an impact mark. The upper neck of the bottle was broken away from the main bottle in a "flower petal" pattern around the circumference. The thread finish was well-formed with proper thread depth and only a small deformation consistent with an impact. The part was grossly deformed and some wall material of the bottle was missing and the two pieces could not be perfectly matched.
The report states that the lower bottle and base sections were deformed in a crush and buckling pattern which occurred when the larger portion made impact with a hard surface. The bottle ruptured in a highly unusual failure mode. The first and major fracture occurred at the bottle's neck while under very high internal pressure in the range of 200 PSI. The entire rupture sequence took place with the cap sealed.
Dr. Kadlec summarized that he had found no defect in the cap or closure. The bottle ruptured at a very high internal pressure around 200 PSI. The overpressure was caused by a foreign agent or substance in the liquid which was not part of the original bottle. Dr. Kadlec concluded that the two-liter plastic bottle was not defective and its contents did not create overpressure.
The Coca-Cola Company submitted an affidavit of Robert L. Callahan, Jr., its vice-president, who stated that his company does not bottle, sell or distribute the beverage. The company makes the syrup which is used by the bottlers.
Plaintiffs did not submit any expert testimony or evidence to refute Dr. Kadlec's conclusions. They argued in a memo that the only issue was whether the bottle was in normal use, an issue of fact not to be decided by summary judgment.
In reasons for judgment the trial court noted plaintiffs' argument, but quoted Dr. Kadlec that there was a foreign substance in the container, that the product was not defective, and that it was not possible to create explosive pressure with normal Coca-Cola liquid. The court acknowledged that summary judgment is not a substitute for trial, but is a useful procedure to one of multiple defendants in seeking dismissal after the facts become well established by discovery procedures and investigation.
Defendants argue that they are entitled to summary judgment because plaintiffs failed to rebut Dr. Kadlec's expert testimony that something foreign had been introduced into the bottle. They point out that plaintiffs did not file an affidavit or deposition to show that the plastic bottle or its contents were defective.
The failure of the plaintiff to file a counter affidavit does not automatically entitle the mover to summary judgment. Brock v. Newman, 543 So.2d 84 (La.App. 1st Cir.1989), writ denied 548 So.2d 1251 (La.1989). Summary judgment is to be used cautiously and the procedure is not intended as a means of circumventing a trial on the merits. Bank of New Orleans & Trust v. Monco Agency, Inc., 457 So.2d 221 (La.App. 4th Cir.1984), writ denied 461 So.2d 318 (La.1984). It is a drastic remedy and should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La.C.C.P. Art. 966; Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Roger v. Dufrene, 553 So.2d 1106 (La.App. 4th Cir.1989).
The party moving for summary judgment must affirmatively and clearly prove the absence of a genuine issue of *167 material fact. Any doubt must be resolved against summary judgment and in favor of a trial on the merits. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, 427 So.2d 1152 (La.1983); Duvalle v. Kenilworth, 396 So.2d 1268 (La.1981). Inferences to be drawn from underlying facts in the materials before the court must be viewed in the light most favorable to the party opposing the summary judgment. Burke v. Occidental Life Insurance Company of California, 427 So.2d 1165 (La.1983).
The burden of proof is on the party moving for summary judgment and the court should resolve every reasonable doubt against the mover. Oller v. Sharp Electric, Inc., 451 So.2d 1235 (La.App. 4th Cir.1984), writ denied 457 So.2d 1194 (La. 1984). The fact that evidence preponderates in favor of the mover does not justify the denial of trial on the merits. Carroll v. Newtron, 477 So.2d 719 (La.App. 3rd Cir. 1985), writ denied 478 So.2d 530 (La.1985). The court should not seek to determine whether it is likely that the mover will prevail on the merits but rather whether there is an issue of material fact. Good v. Fisk, 524 So.2d 203 (La.App. 4th Cir.1988).
The movants' pleadings, affidavits and documents must be scrutinized closely; those of the opponent are to be indulgently treated. Supporting and opposing affidavits must be made on personal knowledge and set forth facts that would be admissible in evidence. La.C.C.P. Art. 967; Barham & Churchill v. Campbell & Associates, 503 So.2d 576 (La.App. 4th Cir.1987), writ denied 503 So.2d 1018 (La.1987).
In McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308, 310 (La.App. 2d Cir.1984), writ denied 457 So.2d 1194 (La.1984) the Court concluded:
Statements in affidavits or depositions of the opinion or belief of an expert based on his special training and experience do not meet the requirement of personal knowledge. A statement of opinion is not sufficiently certain or probative to justify a conclusion that there is no issue of fact which should be determined by a trial on the merits. Expert opinion statements or testimony requires evaluation by the trier of fact as to probative value. A motion for summary judgment is not the proper vehicle for the trier of fact to evaluate evidence and determine the facts which are disputed.
See also Weston v. Raymond Corporation, 531 So.2d 528 (La.App. 5th Cir.1988), writ denied 533 So.2d 360 (La.1988); Dixon v. Perlman, 528 So.2d 637 (La.App. 2d Cir.1988); Caplan v. Pelican Homestead & Savings Association, 542 So.2d 622 (La. App. 5th Cir.1989). Opinion evidence, even if entitled to some weight, cannot be given conclusive weight because opinions should be subject to cross-examination and credibility evaluation. Jackson v. Case, 522 So.2d 709 (La.App. 5th Cir.1988).
The deposition and report of Dr. Kadlec do not meet the legal requirement of personal knowledge. The trial court improperly relied upon Dr. Kadlec's deposition testimony. However, summary judgment may be justified without Dr. Kadlec's testimony.
Traditionally, a manufacturer of a product which involves risk of injury to the user is liable to any person, who without fault on his part, sustains an injury caused by a defect if the injury might reasonably have been anticipated. Weber v. Fidelity & Casualty Insurance Co. of New York, 259 La. 599, 250 So.2d 754 (1971). Victim fault is no longer a complete bar, but comparative fault may be applied in certain cases to reduce the victim's recovery. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985). For purposes of products liability, the manufacturer of a product includes the original manufacturer and any entity that substantially modifies or materially alters the product after its original manufacture through the use of different components or methods of assembly. Winterrowd v. The Travelers Indemnity Company, 452 So.2d 269 (La.App. 2d Cir.1984), affm'd 462 So.2d 639 (La.1985).
For an injured plaintiff to recover based on a foreseeable consequence of a defective product it must be shown: the defendant manufactured the product; the *168 defendant placed it on the market; the product reached the consumer in substantially the same condition as when it was placed on the market; the product was being used in the manner intended by the manufacturer at the time of the injury. Gatlin v. The Coca-Cola Company, 461 So.2d 452 (La.App. 5th Cir.1984). See also Restatement of Torts 2d § 402A (1965).
The plaintiff must prove that the product was defective and that the defect was the proximate cause of the injury. A product is defective if it is unreasonably dangerous for normal use. Robertson v. Gulf South Beverage, Inc., 421 So.2d 877 (La.1982). Normal use is a term of art which includes all intended uses as well as all reasonably foreseeable uses and misuses of the product. Ingram v. Caterpillar Machinery Corporation, 535 So.2d 723 (La.1988); Bloxom v. Bloxom, 512 So.2d 839 (La.1987). See also Brumley v. Firestone Tire & Rubber Company, 459 So.2d 572 (La.App. 3rd Cir.1984), writ denied 462 So.2d 1267 (La.1985). The Supreme Court stated in an escalator case that a product is unreasonably dangerous where its danger outweighs its utility regardless of whether the danger is foreseeable. Brown v. Sears Roebuck Company, 514 So.2d 439 (La. 1987).
We are satisfied that there is an issue of material fact as to whether the contents of the bottle were unreasonably dangerous for normal use. That determination involves a decision on whether a foreign substance was introduced into the bottle or the syrup, or whether the contents of the bottle was in substantially the same condition as when it left the plant. It also involves a decision as to whether the bottle was used in a way not intended by the manufacturer. Therefore, the trial court erred in granting summary judgment to the Coca-Cola Company which provided the syrup to La. Coke.
As for Sewell Plastics, there is no allegation, deposition testimony or affidavit to support a claim that the plastic bottle was defective or unreasonably dangerous for its intended normal use. Gatlin, 461 So.2d at 452, cited by plaintiffs and involving a suit against only the bottler, La. Coke, is not applicable. Plaintiffs' petition merely alleges that Sewell's liability is based on its "[f]ailure to manufacture safe plastic." The record is void of any support for that allegation.
The trial court correctly granted summary judgment to Sewell after the facts clearly established that the plastic bottle was not defective. See Hines v. Remington Arms Company, Inc., 522 So.2d 152 (La. App. 3rd Cir.1988), writ denied 524 So.2d 522 (La.1988).
Summary judgment in favor of Sewell Plastics, Inc. is affirmed. The summary judgment granted to the Coca-Cola Company is reversed and the matter remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
BYRNES, J., dissents in part.
BYRNES, Judge, dissenting in part.
Summary judgment in favor of Sewell Plastics is inappropriate. Where a product is defective because it is unreasonably dangerous for normal use, the manufacturer may be held liable without proof of defective design or a manufacture of the product. Melancon v. Western Auto Supply Co., 628 F.2d 395, 399 (5th Cir.La.1980); Winterrowd v. The Travelers Indemnity Company, 452 So.2d 269, 273 (La.App. 2d Cir.1984), writ granted, 457 So.2d 1185 (La. 1984), writ denied, 457 So.2d 1195 (La. 1984), and jmt. aff'd, 462 So.2d 639 (La. 1985). For purposes of strict liability, the manufacturer of a product includes not only the original manufacturer, but also any entity that substantially modifies or materially alters the product after its original manufacture through the use of different components or methods of assembly. Winterrowd, supra, 452 So.2d at 273-274.
A material issue of fact remains of whether the plastic container combined with its contents created a defective product which is unreasonably dangerous for normal use. Accordingly, I would reverse *169 the summary judgment in favor of Sewell as well as the Coca-Cola Company.