573 So.2d 547 (1991)
Carol Abramson, Wife of/and Samuel E. SCHUDMAK, III
v.
The PRINCE PHILLIP PARTNERSHIP, et al.
No. 90-CA-564.
Court of Appeal of Louisiana, Fifth Circuit.
January 16, 1991.
*548 Anne Lacour Neeb, D. Michael Dendy, Gretna, for plaintiffs-appellants, Carol and Samuel E. Schudmak, III.
Philip A. Franco, Lindsey M. Bailleux, Adams and Reese, New Orleans, for defendant-appellee, Pelican Homestead & Sav. Ass'n.
Before BOWES, GAUDIN and GOTHARD, JJ.
BOWES, Judge.
Plaintiffs, Carol Abramson, wife of/and Samuel E. Schudmak, III (hereinafter Schudmak) filed suit for "Declaratory Judgment and Recognition of Vendor's Lien and Mortgage." Defendant, Pelican Homestead and Savings Association (hereinafter Pelican) filed a motion for summary judgment. After a hearing, the trial court rendered judgment in favor of Pelican, granting the summary judgment ordering that it be dismissed as a defendant to the suit. Schudmak appeals. We affirm.

FACTS
Plaintiffs, Schudmaks, purchased immovable property via a credit sale from Madeline C. Occhipinti.
On July 30, 1982, Schudmak sold the property to defendant, The Prince Phillip Partnership, for $1,250,000.00 ($250,000.00 in cash, plus a promissory note for $1,000,000.00). The transaction was a credit sale, secured by an in rem mortgage against the property.
On April 6, 1984, the Partnership sold the property to its individual partners, Leon A. Golemi, Lena Fros Ina, wife of/and Anthony J. Golemi, Inez Madere, wife of/and Jules P. Millet, Jr., Sarah Baldwin, wife of/and James E. Davies, D & D Partnership, Kram-Mar Partnership, The Golemi & Albrecht Partnership. Attached to the act of sale are procurations given by all the partners to Leon Golemi, authorizing him to execute the sale documents on their behalf.
It is now alleged that the procuration signed by Sarah B. Davis was a forgery, and that the sale was a simulation. The sale was financed by Alliance Federal Savings & Loan Association (hereinafter Alliance), who received a collateral mortgage against the property. Partial payment of $1,000,000.00 was made by the Partnership to Schudmak and he marked "paid" the original $1,000,000.00 note. He also cancelled his vendor's lien and mortgage. Schudmak received a promissory note for the remaining $248,950.00, which was secured by a collateral mortgage, which was subordinate to that of Alliance.
On October 24, 1984, the individual partners sold the property to The Prince Phillip Condominium Corporation for $2,255,000.00. The corporation assumed the first mortgage in favor of Alliance and the second mortgage in favor of Schudmak. In addition, the individual partners remained liable on the debt to Schudmak.
On December 27, 1984, Schudmak executed a "Partial Release of Mortgage," in which he released his mortgage insofar as it affected eleven of the condominiums, including Units 123, 223 and 224. Also, on December 27, 1984, the corporation sold nine of the units, including Units 123, 223 and 224, which were sold to Joan Bertram, wife of/and Gary L. Damare. A $30,400.00 mortgage on each unit was granted to Gulf Federal Savings Bank (hereinafter Gulf Federal). On January 24, 1985, Alliance granted a partial release of mortgage on the nine units sold, including Units 123, 223 and 224, thereby giving Gulf Federal a first mortgage position on that date.
On October 28, 1987, Schudmak filed his "Petition for Declaratory Judgment and Recognition of Vendor's Lien and Mortgage." On November 6, 1987, Schudmak *549 filed a Notice of Lis Pendens generally describing the property on which he claimed a privilege as "Jefferson Parish Subdivision, Lots 9A and F, Square P." Gulf Federal was not named as a party to the suit and did not appear on the Notice of Lis Pendens.
On or about December 31, 1987, Pelican Homestead acquired Gulf Federal and the notes held by Gulf Federal. On February 22, 1989, Pelican acquired the title to Units 123, 223 and 224 by Sheriff's deed at a foreclosure sale.
On April 5, 1989, Schudmak filed a first Amended Petition, and added Pelican to the lawsuit as a defendant. Pelican was not served with notice and citation. On May 3, 1989, Schudmak filed a second Notice of Lis Pendens affecting nine of the condominium units, including Units 123, 223 and 224. Pelican was not named in the Notice of Lis Pendens. On July 26, 1989, Schudmak filed a third notice of lis pendens affecting Units 123, 223 and 224, which named Pelican as a defendant.
After Pelican discovered the existence of the lawsuit and the notice of lis pendens, it filed a motion for summary judgment requesting dismissal of the suit against them and cancellation of the notice of lis pendens.

ANALYSIS
LSA-C.C.P. art. 966 provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
In Caplan v. Pelican Homestead and Sav. Ass'n., 542 So.2d 622 (La.App. 5 Cir. 1989), this court stated as follows:
Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law based on the facts presented to the court is a summary judgment warranted. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Chaisson v. Domingue, 372 So.2d 1225 (La.1979). When there are contradictions on factual issues created by depositions and affidavits, a party is not entitled to summary judgment. Gatlin v. Coca-Cola Co., 461 So.2d 452 (La.App. 5 Cir.1984). All of these principles are now well established law.
The burden to show there is no genuine issue of material fact in dispute is upon the mover of the summary judgment. Any such doubt is resolved against the mover and against the granting of a summary judgment and in favor of a trial on the merits. Chaisson v. Domingue, supra; Ruschel v. Wesbak Park, 466 So.2d 584 (La.App. 5 Cir.1985); Pellegal v. Dureau, 427 So.2d 55 (La. App. 4 Cir.1983).
A summary judgment is not appropriate when it is based on affidavits and accompanying pleadings and other documentary evidence to establish subjective facts such as motive, intent, good faith or knowledge. Verrett v. Cameron Telephone Co., 417 So.2d 1319 (La. App. 3 Cir.1982), writ denied 422 So.2d 164 (La.1982). Neither is a summary judgment the appropriate vehicle for the disposition of a case when the ultimate decision will be based on opinion evidence or the judicial determination of subjective facts.
Appellant alleges that the trial court erred in finding that there was no genuine issue of material fact and that Pelican was entitled to be dismissed from the lawsuit, as well as to have the notices of lis pendens filed against Units 123, 223 and 224 cancelled, as a matter of law.
It is plaintiff's contention that the sale between The Prince Phillip Partnership and the individual partners was a simulation and/or fraudulent and that he was induced to cancel his vendor's lien, thereby causing him to forfeit his status as primary mortgage holder, by this fraudulent sale.
In brief, appellant presents the following three issues for review:

I.
Are a fraudulently cancelled mortgage and vendor's lien effective against third *550 parties? And, does the public record doctrine protect an "innocent" third party who acquires property on which a prior mortgage has been cancelled fraudulently or without the consent of the holder?
II.
May the trial court on a motion for summary judgment "presume" that the party acquiring a security interest is an innocent third party simply because it obtained a mortgage certificate prior to perfection of the security device?
III.
Does the public record's doctrine protect reliance on matters in the public record or matters not in the public record, that is, can one rely on fraudulent documents simply because they have been "blessed" by being placed in the public record?
In issues one and three, Schudmak argues that the cancellation of his vendor's lien was not effective against third parties because the cancellation was fraudulently induced.
LSA-R.S. 9:2721 provides that:
No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovables is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
A third party purchaser is entitled to rely on the absence from the public records of any unrecorded interest in the property. Dallas v. Farrington, 490 So.2d 265 (La.1986) and may rely on the ownership status of real property as reflected on the face of the public record. Noe v. Roussel, 310 So.2d 806 (La.1975).
When Pelican purchased the three condominium units at a sheriff's sale, there was no interest of Schudmak recorded in the public records, he having cancelled his interest by a partial release of mortgage. Accordingly, Pelican acquired title to the condominium units free and clear of any alleged interest claimed by Schudmak which were unrecorded.
Schudmak argues that the public records doctrine does not protect Pelican as a third party purchaser in this case alleging that his mortgage was cancelled through fraud.
[9] An exception to the public records doctrine exists where a mortgage is cancelled from the public records through fraud, error or mistake. The cancellation of a mortgage through fraud, error or mistake, without the consent or knowledge of the holder, does not deprive the holder of his security, even as against third parties dealing with the property in good faith in reliance on the public records. McL. Development Company, Inc., v. Pyburn, 268 So.2d 296 (La.App. 2 Cir.1972); Davis-Wood Lumber Company v. DeBrueys, 200 So.2d 916 (La.App. 1 Cir.1967); National Acceptance Company of America v. Wallace, 194 So.2d 194 (La.App. 2 Cir.1967), writs denied, 250 La. 467, 196 So.2d 533, 250 La. 470, 196 So.2d 534 (1967).

Central Bank v. Frost, 552 So.2d 508 (La.App. 2 Cir.1989)
In Central Bank v. Frost, at page 512, the court examined the rationale for this exception to the public records doctrine.
Cases involving fraudulent or erroneous cancellations, in which the exception to the public records doctrine has been applied, involve mortgage holders who did not know or consent to the cancellation and who had no way of knowing of the wrongful cancellation of the mortgage and no means of protecting their security interests in the property. In many of these cases, the mortgage holder becomes aware of the cancellation only after a sale of the property to a third party. In such cases, mortgage holders are limited in the methods available to correct the wrongful cancellations *551 and to protect their security interests. Therefore, the exception to the public records doctrine is necessary in the interest of justice.
In this case, however, Schudmak knew of the cancellation of his mortgage; in fact, it was he who filed to have the vendor's lien cancelled.
The fact that he may have been fraudulently induced to cancel his vendor's lien is of no moment to and cannot affect the rights of innocent third parties.
The conveyance records are the only thing to which one dealing with real estate needs to look and third persons purchasing upon the faith of the public records are not bound by any knowledge except such as is disclosed by such records. Neither fraud nor want of consideration nor secret equities between the parties who have placed on the public records a title valid upon its face can be urged against a bona fide purchaser for value who has acted on the faith of such recorded title. Cole v. Richmond, 156 La. 262, 100 So. 419 (1924); Brewster Development Company, Inc. v. Fielder, 271 So.2d 299 (La.App. 2 Cir.1972), writ denied, 272 So.2d 695 (La.1973); Sklar Producing Co. v. Rushing, 262 So.2d 115 (La.App. 2 Cir.1972), writ denied, 262 La. 310, 263 So.2d 47 (1972); Hasslocher v. Recknagel, 160 So.2d 421 (La.App. 2 Cir. 1962), writ denied, 245 La. 964, 162 So.2d 14 (1964); Jackson v. Golson, 91 So.2d 394 (La.App. 2 Cir. 1956), writ denied (1957).

Roemer v. Caplis, 369 So.2d 1186, 1192 (La.App. 2 Cir.1979)
Under Louisiana law, fraud between a seller and purchaser cannot affect a subsequent purchaser who purchases the property for value where the public records show a valid prior transfer of the property. Owen v. Owen, 336 So.2d 782 (La. 1976); Succession of Wilson v. Wilson, 446 So.2d 526 (La.App. 3 Cir.1984).
Accordingly, the exception to the public records doctrine by reason of fraudulent cancellation is not applicable in this case.
In his second allegation of error, plaintiff alleges that a genuine issue of material fact exists with regard to any knowledge and or participation of Alliance to the alleged fraudulent cancellation of the lien. While there may be issues of fact as to whether Alliance knew of the alleged fraud, we find that this factual issue is not relevant to determine whether Pelican, as a third party purchaser in good faith, acquired title to the property clear of any encumbrances alleged by Schudmak. While interests arising from this alleged fraudulent sale may give rise to claims by Schudmak against The Prince Phillip Partnership and the individual partners, they cannot affect Pelican's title to condominium units 123, 223 and 224, as these interests were unrecorded when Pelican purchased these units. As no issue of material fact exists, the trial court did not err in granting judgment in favor of Pelican as a matter of law.
For the above-discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against appellant.
AFFIRMED.