United States Court of Appeals,

Fifth Circuit.

No. 91-9508.

AMERICAN NATIONAL INSURANCE COMPANY, Plaintiff-Appellant,

v.

HELLER FINANCIAL, INC., Intervenor-Appellee,

v.

BELLEMONT COMMERCIAL INVESTMENT CORPORATION, et al., Defendants.

May 4, 1993.

Appeal from the United States District Court for the Middle District of Louisiana.

Before POLITZ, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

American National Insurance Company appeals an adverse summary judgment holding that a mortgage held by Heller Financial, Inc. primed its mortgage. For the reasons assigned, we affirm.

Background

On April 15, 1977 Bellemont Commercial Investment Corporation gave a promissory note to American National for $5,250,000, secured by a first mortgage on certain properties owned by Bellemont. The promissory note was duly paraphed to the mortgage for identification and the mortgage was recorded in the mortgage records maintained by the clerk of court of East Baton Rouge Parish, Louisiana. The note was payable on demand and thus matured as of the date of its execution. The note, as quoted in the mortgage, also provides that it would become payable over a 30-year period depending upon certain future conditions. Found particularly relevant by the learned trial judge and by us is the following:

> Borrower and Lender will, sixty (60) days after the recordation of the acceptance of improvements, execute in authentic form and record with the Clerk and Recorder of East Baton Rouge Parish, Louisiana, an acknowledgement of completion....

On December 1, 1978, the president of Bellemont executed an affidavit acknowledging that the construction had been completed. The affidavit was filed in the public records maintained by the

East Baton Rouge Parish clerk of court. No acceptance of the work was ever filed. No writing executed by the "Borrower and Lender" manifesting acceptance of the improvements or of conversion of the demand note to a long-term obligation was ever recorded. It appears that American and Bellemont did enter into a permanent loan agreement extending the maturity date of the note but no recordation of such was ever accomplished.

On September 6, 1979 Bellemont gave Heller a collateral mortgage note for $1,000,000 payable on demand and secured by an Act of Collateral Mortgage of even date, recorded that date in the mortgage records of East Baton Rouge Parish. When filed this mortgage was primed by the mortgage held by American National. Pursuant to a pledge agreement, Bellemont pledged this note as security for an "amended and substituted promissory note" dated April 10, 1981, in the principal amount of $5,000,000. Nine other collateral mortgage notes were similarly pledged to secure payment of the April 10, 1981 note.

Heller reinscribed its mortgage on August 31, 1989. American National never reinscribed its mortgage.

Bellemont defaulted in its payments and American National foreclosed, receiving a judgment and writ authorizing public sale. Heller intervened, claiming that its mortgage primed American National's because of the latter's failure to reinscribe its mortgage. The district court granted summary judgment recognizing Heller's priming mortgage position. The court invoked Fed.R.Civ.P. 54(b). American National timely appealed.

Analysis

In this diversity jurisdiction case we are bound to apply the substantive law of Louisiana,[1]—the codical articles and statutory provisions relating to the recording and reinscription of mortgages.

Louisiana typically gives a priority to competing interests in real estate, referred to as immovables in the Civil Code, by reference to the dates of the public recordation of viable mortgage

---

[1]The Louisiana legislature, in Acts which became effective January 1, 1993, amended the applicable statutory authorities. La.Civ.Code arts. 3299-3327 (Supp.1993).

claims. The recording of such claims is with the clerk of court of the parish in which the immovable property is located. Recordation places all third parties on notice of the status of claims against the property, whether by mortgage or privilege (sometimes also referred to as liens).[2] In the instance of a mortgage which, by its nature, is for a fixed temporary period, the protection extended by recordation expires absent timely reinscription in the public records.[3]

If a mortgage is not timely reinscribed it becomes a nullity and no longer serves as notice to third persons. A priming position may not be maintained by an expired mortgage.[4]

The sole issue presented by this appeal is whether the earlier recorded but not reinscribed mortgage of American National primes the later recorded but reinscribed mortgage of Heller. Absent reinscription, is there anything about the recorded American National mortgage or subsequent public record filings which act to prevent the lapse of its mortgage? The trial court answered this inquiry in the negative.

Article 3369 of the Louisiana Civil Code differentiates between variously maturing obligations, prescribing that if the mortgage secures an "indebtedness, the whole of which matures less than nine years from the date of the obligation," then, absent reinscription, recording is effective for ten years from the date of the obligation.[5] If the maturity is extended and any part of the indebtedness matures after nine years, then the Civil Code provides for the vitality of the recordation until six years after the extension.[6] The Civil Code protects third parties by requiring that the extension be noted in the margin of the original recordation and that a cross-reference to the Book

---

[2]La.Civ.Code art. 3342 provides:

> Conventional mortgage is only acquired by consent of the parties.... But these mortgages are only allowed to prejudice third persons when they have been publicly inscribed on the records kept for that purpose and in the manner hereinafter directed.

[3]La.Civ.Code art. 3369(E) (adding ten years from the date of timely renewal).

[4]*Humphreys v. Royal,* 41 So.2d 220 (La.1949) (superseded by La.R.S. 9:2756).

[5]La.Civ.Code art. 3369(A)(1).

[6]La.Civ.Code art. 3369(A)(2).

and Folio be provided.[7]  Finally, if the mortgage secures an indebtedness which matures in whole or in part nine years or more from the date of the obligation, then the Civil Code recognizes effective public notice until six years after the date of maturity.[8]

The Civil Code seeks to foster financial transactions and maximize protection to all parties exercising reasonable diligence.  To a lender desiring the protection of an interest in immovable property, the rules are sharp, certain, and clear.  The securing of an indebtedness with a mortgage interest by the use of proper instruments properly recorded poses no particular burden.  The mortgage position gained as of the date and time of recordation is easily extended to cover the full life of the secured obligation.  With such security, lenders are more prone to make loans.  These provisions advance the interests of lenders and borrowers.  Third persons are likewise protected by the Civil Code and ancillary statutory provisions.  The mortgage encumbrance must appear in the public records of the pertinent parish.  The linchpin of the system is the assurance that one may rely in absolute confidence on information reflected in those records.  Private understandings or agreements, however formal and binding as between the parties, have no effect whatever on third persons unless they are memorialized in the public records maintained by the clerk of court of the subject parish.

American National maintains that its mortgage secured an obligation which, at least in part, matured nine years or more from its date of execution.  It bases its argument, as it must, on the language of the mortgage and the references to the promissory note therein.  The note is payable on demand.  It was therefore mature on the date it was executed.  American National contends that its promissory note is a long-term permanent note with a demand feature during construction.  We are not persuaded.  American National also maintains that the note has an alternative performance condition triggered by completion of construction.  This argument founders on the language of the mortgage, quoted in part above, which provides:

> Borrower and lender will, sixty (60) days after the recordation and acceptance of the improvements, execute in authentic form and record with the Clerk and Recorder of East Baton Rouge Parish, Louisiana, an acknowledgement of completion, at which time lender will

---

[7]La.Civ.Code art. 3369(C).

[8]La.Civ.Code art. 3369(B)(1).

advance at least [$4,200,000] pursuant to the terms hereof....

This subsequent loan would be payable over 366 months.

American National stands on this language and the definition of indebtedness in the mortgage which includes the potential related loan. We are not persuaded that the mere inclusion of a reference to possible, even probable, additional loans, automatically extends the mortgage protection to such additions should they occur. The existence of the additional loan must be manifest from the public records; otherwise third parties could not rely in confidence on that which the public records reflect. The pertinent public records in the case at bar do not reflect a mutual acceptance of the improvements and acknowledgment of completion. Third parties, therefore, were not put on fair and adequate notice.[9]

American finally submits that the mortgage should trigger a duty of inquiry. We are mindful that Louisiana courts have not been as clear as one might wish in their treatment of records which, on their face, suggest that a future condition may affect the underlying indebtedness. The general rubric advises that if a recorded instrument contains language causing a reasonable person to suspect a defect in title he must "avail himself of the means and facilities at hand to obtain knowledge of the true facts."[10]

American relies on *Port Arthur Towing Co. v. Owens-Illinois, Inc.,*[11] a 1972 federal district court decision applying Louisiana law, which found a duty to investigate from the mere existence of an option clause in a recorded contract. A Louisiana intermediate appellate court in *Julius Gindi & Sons, Inc. v. E.J.W. Enterprises, Inc.*[12] also dealt with a renewal option which was reflected in the face of the lease but the exercise of the option was not recorded. That court rejected *Port Arthur*

---

[9]"[U]nrecorded documents are not binding on a third party, even if the unrecorded document is referred to in a recorded one." *Judice-Henry-May Agency, Inc. v. Franklin,* 376 So.2d 991, 992 (La.App.1979), *cert. denied,* 381 So.2d 508 (1980). When a filing creates uncertainty, as this one did, the third party is entitled to rely on the face of the record and its literal meaning.

[10]*Brown v. Johnson,* 11 So.2d 713, 716 (La.App.1942).

[11]352 F.Supp. 392 (W.D.La.1972), *aff'd,* 492 F.2d 688 (5th Cir.1974).

[12]438 So.2d 594 (La.App.1983).

*Towing* as being "incorrect in view of Louisiana law" and held that "the duty to inquire should be limited only to the recorded instruments."[13] The Louisiana Supreme Court approved this concept in *Noe v. Roussel.*[14]

These and later precedents[15] convince us that Louisiana courts, in applying Louisiana law, look with great disfavor on provisions of unrecorded documents referenced in recorded documents and require that the public records must fairly announce the claim asserted and not merely invite further inquiries which might disclose the claim.

The judgment of the district court is AFFIRMED.

---

[13]Id. at 596;  accord *Judice-Henry-May Agency, Inc.,* 376 So.2d at 993 (references in recorded instruments cannot give rise to a duty to inquire to matters outside of the public record).

[14]310 So.2d 806 (La.1975) (effect of recording of *lis pendens*).

[15]*Schudmak v. Prince Phillip Partnership,* 573 So.2d 547 (La.App.1991) (third-party purchaser may rely on the ownership status "as reflected on the fact of the public record").