# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2022

Lyle W. Cayce
Clerk

No. 22-30092

Azby Fund,

*Appellant*,

*versus*

Wadsworth Estates, L.L.C.; Joseph Young, Jr.,

*Appellees*.

Appeal from the United States District Court
for the Easter District of Louisiana
USDC No. 2:21-CV-1230

Before Higginbotham, Duncan, and Engelhardt, *Circuit Judges*.
Per Curiam:*

After Wadsworth Estates ("Wadsworth") declared Section 11 bankruptcy, one of its creditors, Azby Fund ("Azby"), moved under 11 U.S.C. § 506 to determine its creditor status. Wadsworth, as the debtor in possession, objected to the motion, claiming that Azby had failed to timely reinscribe its 2006 mortgage and thus had lost its secured status under

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30092

Louisiana law. The bankruptcy court and district court both agreed with Wadsworth that Azby had lost its secured status. We affirm.

I.

On March 28, 2006, Azby loaned Wadsworth $400,000. The loan was secured by a Multiple Indebtedness Mortgage (the "2006 Mortgage") on a parcel of land, known as the Wadsworth Tract, in St. Tammany Parish, Louisiana. The 2006 Mortgage was recorded in the St. Tammany Parish mortgage office on March 29, 2006. In 2013, Azby and Wadsworth amended the 2006 Mortgage by executing an Amended and Restated Note (the "Amended Note"). The Amended Note was accompanied by a First Amendment to Multiple Indebtedness Mortgage, which was recorded in the public records on August 5, 2013 (the "Amended Mortgage"). The Amended Mortgage did not create a new mortgage or encumber additional property; rather, it merely changed a section concerning the obligations secured by the 2006 Mortgage and provided that "all of the other terms of the [2006] Mortgage remain as set forth in the [2006] Mortgage."[1]

In 2020, Wadsworth filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Because the bankruptcy court never appointed a trustee, Wadsworth obtained, and still maintains, debtor in possession status. Four other creditors claim secured status over the Wadsworth Tract: (1) First American Bank and Trust, which recorded a mortgage on March 29, 2006; (2) Beverly Construct Co., LLC, which recorded a mortgage on October 8, 2009; (3) Joseph Young, Jr., an appellee here, who recorded a mortgage on

---

[1] Specifically, the amendment replaced this phrase in the 2006 Mortgage—"Mortgagor's promissory note dated March 27, 2006, in the principal amount of $400,000")—with the following: "Mortgagor's promissory note dated March 27, 2006, in the principal amount of $400,000, as amended by the Amended and Restated Note dated _____, 2013 . . . ."

2

No. 22-30092

June 16, 2017; and (4) First National Bankers Bank, which recorded a mortgage on February 27, 2018. Combined, the five creditors have secured debt of about $17 million on the Wadsworth Tract, which far exceeds its undisputed $9 million fair market value. Indeed, Young's secured debt alone ($9.3 million) exceeds the fair market value.

On April 14, 2021, Azby moved for a Determination of Secured Claim under 11 U.S.C. § 506(b), which generally permits a creditor whose claim is secured by property of a value greater than the claim to recover interest, fees, costs, or charges. Wadsworth objected to Azby's motion, and Azby responded, arguing that Wadsworth lacked standing to object and that its objection was in any event meritless. On June 11, 2021, the bankruptcy court ruled against Azby, finding that Azby's failure to reinscribe the 2006 Mortgage had caused Azby to lose its priority status—relegating Azby to fifth in line. Azby appealed to the United States District Court for the Eastern District of Louisiana. Wadsworth and Young filed a single opposition brief.[2] The district court rejected Azby's standing argument and affirmed the bankruptcy court's decision on the merits.

## II.

In appeals arising from a district court's order affirming the final judgment of a bankruptcy court, we apply the same standard of review as the district court. *Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382, 385 (5th Cir. 2018). Accordingly, we review the district court's decisions on standing and statutory interpretation *de novo*. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 538 (5th Cir. 2009).

---

[2] The parties dispute whether Young properly objected to Azby's § 506(b) motion.

No. 22-30092

III.

A.

We first address Azby's argument that Wadsworth lacks prudential standing to contest the § 506(b) motion. In addition to Article III standing, a party in a bankruptcy proceeding must demonstrate its prudential standing to challenge a bankruptcy court's order. *Labuzan*, 579 F.3d at 539. Typically, "[t]o determine whether a party has standing to appeal a bankruptcy court order, this court uses the 'person aggrieved' test." *Dean v. Seidel (In re Dean)*, 18 F.4th 842, 844 (5th Cir. 2021) (citation omitted); *In re Coho Energy, Inc.*, 395 F.3d 198, 202–04 (5th Cir. 2004) (applying test in Chapter 11 proceeding). This requires an appellant to show it is "directly, adversely, and financially impacted by a bankruptcy order." *In re Dean*, 18 F.4th at 844 (citation omitted).

Azby contends Wadsworth lacks prudential standing because the Wadsworth Tract is valued at less than the amount of the creditors' secured claims. Accordingly, Wadsworth stands to gain nothing from the sale of the property because nothing will be left after the secured creditors take their share. Wadsworth counters that, as a debtor in possession, it is vested with the rights, powers, and duties of a bankruptcy trustee. As such, Wadsworth has a statutory duty to protect the estate by objecting to Azby's § 506(b) motion, which gives it prudential standing.

We agree with Wadsworth. As the district court correctly found, Azby's argument ignores Wadsworth's fiduciary duties as a debtor in possession. Under the Bankruptcy Code, a debtor in possession is vested with the same rights, powers, and duties as a bankruptcy trustee. 11 U.S.C. § 1107(a). Among other duties, a trustee "shall . . . examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. § 704(a)(5). Thus, a debtor in possession, like a trustee, takes on fiduciary

4

responsibilities to all creditors. *See In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). "Implicit in the duties of a Chapter 11 trustee or a debtor in possession as set out in Sections 1106 and 704 of the Bankruptcy Code is the duty of such a fiduciary to protect and preserve the estate . . . ." *In re CoServ*, 273 B.R. at 497; *see also Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461 (6th Cir. 1982) ("[A] debtor in possession has the duty to protect and conserve the property in his possession for the benefit of creditors."). Consequently, as a debtor in possession, Wadsworth has prudential standing to contest Azby's § 506(b) motion.[3]

B.

We turn to the merits. Azby argues that the recordation of the Amended Mortgage in 2013 initiated a new ten-year inscription period. Wadsworth counters that, under applicable Louisiana law, the duration of the effect of a mortgage's recordation turns on the date the mortgage is created and, if applicable, the date the mortgage is reinscribed. *See* La. Civ. Code Ann. arts. 3357, 3361–65. Azby's Amended Mortgage qualified as neither and so, according to Wadsworth, did not commence a new ten-year period.

In these bankruptcy proceedings, Louisiana law governs the validity and scope of a secured interest. *See Butner v. United States*, 440 U.S. 48, 54–55 (1979). The general rule is that the effect of a recorded mortgage lasts for ten years from the date of the instrument. *See* La. Civ. Code Ann. art. 3357 ("Except as otherwise expressly provided by law, the effect of recordation of an instrument creating a mortgage or pledge or evidencing a privilege ceases ten years after the date of the instrument.").[4] If the mortgage

---

[3] Because Wadsworth has standing, we need not address whether Young properly objected to Azby's motion.

[4] *See also id.*, rev. cmt. (b) (referring to the "general rule that the effect of an inscription ceases ten years after the date of the document evidencing the mortgage, pledge,

is reinscribed before the effect of recordation ceases, it continues for an additional ten years from the date of the recorded notice of reinscription. *See id.* art. 3364. The Louisiana Civil Code ("Code") prescribes an "exclusive" method of reinscription. *See id.* arts. 3362, 3363. It also specifies that an "amendment" of a mortgage instrument does not constitute a "reinscription" of the mortgage. *Id.* art. 3363. Thus, if a mortgage interest is not properly reinscribed, junior security interests will become senior to it. *See Am. Nat'l Ins. Co. v. Heller Fin., Inc.*, 989 F.2d 854, 856 (5th Cir. 1993); LA. CIV. CODE ANN. art. 3365 (explaining that cessation of an original recordation period causes the security interest to lose its seniority status).

These principles support the district court's conclusion that Azby's Amended Mortgage failed to commence an additional ten-year inscription period in 2013. Azby concedes, as it must, that the amendment did not constitute a reinscription under articles 3362 and 3363. Consequently, under article 3357, the effect of the original mortgage ceased on March 29, 2016.

Azby nonetheless argues that, under article 3347, recording the Amended Mortgage provided sufficient notice to third parties and established its own primacy date. We disagree. Article 3347 says nothing of the sort: the article generally makes an instrument's recordation effective upon filing,[5] but it does not address the specific questions of mortgage duration covered by articles 3357 through 3364. The district court's conclusion was therefore correct: "Azby does not cite any authority to

---

or privilege"). The effect of recordation is extended for an additional six years if the instrument describes any secured obligation that "matures nine years or more after the date of the instrument." *Id.* art. 3358.

[5] "The effect of recordation arises when an instrument is filed with the recorder and is unaffected by subsequent errors or omissions of the recorder. An instrument is filed with a recorder when he accepts it for recordation in his office." LA. CIV. CODE ANN. art. 3347.

No. 22-30092

support its argument that the recordation of the Amended Mortgage, which did not create a mortgage but merely amended the terms of an existing mortgage, triggered the start of a new inscription period."

\*     \*     \*

The district court's judgment is AFFIRMED.